[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14749
Non-Argument Calendar

_____

Agency No. A206-882-182

ELIDA A. FLORES-PANAMENO,
CHRISTIAN ALEXANDER PANAMENO-FLORES,
MADELINE BATSAVE PANAMENO-FLORES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(January 22, 2019)

Before MARCUS, ROSENBAUM, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

Elida Antonia Flores-Panameno petitions for review[1] of the Board of Immigration Appeals's ("BIA") dismissal of her appeal.  In short, Flores-Panameno asserts she received ineffective assistance of counsel because her former attorney misled her into accepting voluntary departure by telling her she would immediately be deported if she did not accept it.  She filed a motion to reopen on that basis.  The immigration judge ("IJ") denied that motion.  He found her acceptance of voluntary departure was truly voluntary, despite the ineffective assistance of counsel, because he had himself gone through what he deemed to be appropriate procedures at the departure hearing to ensure that was so.

We lack a transcript of the hearing in question, hampering our ability to decide this petition.  We conclude Flores-Panameno bore the burden of producing any such transcript.  Because she did not produce a transcript, we find that we may rely on the IJ's reconstruction of the record.  In this case, however, the IJ's reconstruction may be incomplete.  Accordingly, we are unable to assess fully Flores-Panameno's voluntariness.  We therefore grant the petition and remand to the BIA to determine the full scope of the IJ's inquiry into voluntariness, as set forth in more detail below.

**I.**

---

[1] Flores-Panameno is the lead petitioner.  Her two minor children are derivative beneficiaries in these proceedings.  For ease, we refer to her as the sole petitioner.

**A.**

On or about December 5, 2014, Flores-Panameno and her two minor children, natives of El Salvador, entered the United States.  Two days later, Flores-Panameno was issued a Notice to Appear for being an alien in the United States without being admitted or paroled.  After she retained counsel, who secured a transfer of venue to Atlanta and a continuance, a master calendar hearing was scheduled for February 11, 2016.

The record does not expressly reveal what happened at the February hearing, although the events of that hearing remain relevant.  The next thing we know is that, at the March 15, 2016, hearing, Flores-Panameno requested pre-conclusion voluntary departure and signed a declaration regarding non-coercion.  The declaration required her to acknowledge (among other things) that she admitted to all charges/conceded to removability, that the only relief she sought was voluntary departure, that she was not coerced, and that she waived all rights to appeal.  If Flores-Panameno filed a motion to reconsider, she acknowledged, the grant of voluntary departure would be terminated automatically and "the alternative order of removal [would] take effect immediately."  The IJ granted her request and gave her until July 13, 2016, to depart.  There is no transcript in the record of the March 15, 2016, hearing, but there are handwritten notes on the IJ's order that read, "Advised orally" and "Knowing and voluntary request for VD."

3

**B.**

On July 12, 2016, Flores-Panameno, through new counsel, moved to reopen the proceedings. She alleged ineffective assistance of her former counsel for failure to apply for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Flores-Panameno explained that she had retained her former counsel to assist her in applying for asylum. Her former counsel told her he would prepare the application. But on the day of the February 11, 2016, hearing, he told her it was too late to apply. He stated the IJ would let them know at the following hearing whether the IJ would accept the late asylum application. Yet at the March 15, 2016, hearing, the attorney asked Flores-Panameno to sign a document but did not explain what the document was. The document was a Request for Pre-Conclusion Voluntary Departure and Declaration Regarding Non-Coercion. Flores-Panameno "thought [the document] was some sort of certification" and did not find out what she had signed until the IJ called the case. When she expressed her confusion to the IJ, he ordered a recess to give her time to speak with her attorney. Her attorney did not speak Spanish, and she did not speak English, so conversing was difficult. The attorney told her the IJ would not accept her asylum application, so voluntary departure was her only option to avoid immediate removal. She asserts she accepted voluntary departure thinking it was her only

4

choice; had the options been explained to her before the hearing, she says, she would not have acquiesced.

Indeed, she argues, she is "unable to return" to El Salvador. In her affidavit attached to the motion to reopen, she stated she left because she and her children were being threatened by two rival gangs, MS-13 and the 18th Gang. Her children refused to join the gangs, and the gang members threatened to kill them. Gang members also showed up at Flores-Panameno's home and demanded money; when she said she could not pay, they threatened to kill her children. She filed a police report, and gang members called her to inform her that the police were working with them and had told them about the report. That incident pushed her to leave El Salvador for the United States, where she says she always intended to apply for asylum.

On April 11, 2017, the IJ denied Flores-Panameno's motion to reopen. He explained that at the March 15, 2016, hearing, he had given Flores-Panameno's former counsel two opportunities to explain to Flores-Panameno what she was signing. The IJ also stated that he explained to her "on the record the consequences of accepting voluntary departure through [a] Spanish translator" and was satisfied that she understood.

Thus, even though the IJ concluded Flores-Panameno had demonstrated ineffective assistance of counsel, he found her contention that she was misled to be

5

"wholly without merit."  He found that she "did not accept voluntary departure based on [her] former counsel's advice, but based on the procedure that the [IJ] followed to ensure that [she] knowingly and voluntarily accept voluntary departure."  Citing to a record not before us, the IJ said he explained several times that voluntary departure was truly voluntary and that Flores-Panameno did not have to accept it; that he asked twice if the contents of the document she signed were explained in a language she understood; and that he asked if she was forced or coerced into accepting voluntary departure.  The IJ also insisted that he explained, through a translator, the consequences of accepting voluntary departure—including the finality and non-appealability of the decision.  Thus, the IJ concluded that, because Flores-Panameno knowingly and voluntarily requested voluntary departure, her former counsel's conduct "was not so prejudicial that there is a reasonable probability that, but for his conduct, the outcome of [her] proceedings would have been different."

Flores-Panameno appealed to the BIA.  She acknowledged that the IJ followed proper procedure to grant voluntary departure.  Nevertheless, she contended that she agreed to voluntary departure not because of what the IJ said but because she thought she had to do what her attorney told her to do and because she was not prepared to make a decision at the hearing.

6

The BIA dismissed the appeal.  It agreed with the IJ that Flores-Panameno failed to establish actual prejudice.  It found the IJ took "substantial steps to ensure" her acceptance was knowing and voluntary and that she had not been misled by counsel.  Flores-Panameno "concede[d] . . . that these advisals were given and the [IJ] used the proper procedure for granting pre-conclusion voluntary departure."[2]

This timely petition for review followed.

## II.

## A.

"We review the BIA's denial of a motion to reopen for abuse of discretion.  Our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious."  *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006) (citation and quotation marks omitted). The BIA may deny a motion to reopen based on one of at least three independent grounds: "1) failure to establish a prima facie case;

---

[2] The BIA also stated that Flores-Panameno's "assertion that her intent was always to apply for asylum is contradicted by the fact that her written pleading states that the relief to be sought is Temporary Protected Status and prosecutorial discretion.  The box for asylum and related relief is not checked."  The BIA should not have placed weight on Flores-Panameno's January 16, 2016, written pleading, in which she sought relief in the form of Temporary Protected Status and prosecutorial discretion.  That pleading was prepared by the attorney she alleges was acting against her stated wish to apply for asylum and whose assistance the IJ found to be ineffective.  But that portion of the BIA's analysis was nonessential to the rest of its holding, which relied primarily on the "substantial steps" taken by the IJ to ensure voluntariness.

7

2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001).

We review only the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." *Id.* at 1284. "Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.*

### B.

8 U.S.C. § 1362 provides that aliens have the right to retain private counsel in their removal proceedings. Aliens who are represented in civil removal proceedings have the right to effective assistance of counsel. *Gbaya v. U.S. Att'y Gen.*, 342 F.3d 1219, 1222 (11th Cir. 2003) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)).

We have held "that, in addition to substantial, if not exact, compliance with" certain procedural requirements set forth by the BIA,[3] "a petitioner claiming ineffective assistance of counsel in a motion for reconsideration must also show prejudice" as well as counsel's deficient performance. *Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005). "Prejudice exists when the performance of

---

[3] The parties do not dispute that Flores-Panameno complied with the BIA's procedural requirements.

8

counsel is so inadequate that there is a reasonable probability that but for the attorney's error, the outcome of the proceedings would have been different." *Id.*

Flores-Panameno contends the BIA abused its discretion in not recognizing that she was prejudiced by being blindsided by the threat of immediate deportation at the March 15, 2016, hearing. That blindsiding, she argues, misled her into accepting voluntary departure. *Dakane* instructs that Flores-Panameno must demonstrate that there is a reasonable probability that, but for her former counsel's conduct, she would not have accepted voluntary departure.

**1.**

We first address the inadequate record. We have no transcript of the March 15, 2016, hearing.

In a removal proceeding, the Attorney General has a statutory obligation to ensure there is "a complete record . . . of all testimony and evidence produced at the proceeding."[4]  8 U.S.C. § 1229a(b)(4)(C). "If an appeal is taken from a decision of an immigration judge, the record of proceeding shall be forwarded to the [BIA] upon the request or the order of the [BIA]." 8 C.F.R. § 1003.5. The BIA "transcribes proceedings, after receiving a properly filed appeal from the decision of an [IJ]." Executive Office for Immigration Review, Board of Immigration Appeals Practice Manual at 51 (July 11, 2018),

---

[4] There is, in fact, an audio recording, but it is not part of the record.

https://www.justice.gov/eoir/page/file/1079696/download.  Although the BIA does not normally prepare transcripts in cases involving motions to reopen, it may do so at its discretion or upon a party's request with stated rationale.  *Id.*  If a transcript is not prepared, a party may cite to the BIA the audio recording of the IJ proceedings, which may be listened to by making arrangements through immigration court staff. *Id.* at 62; Executive Office for Immigration Review, Immigration Court Practice Manual at 69 (Aug. 2, 2018), https://www.justice.gov/eoir/page/file/1084851/download.

Here, the BIA reviewed the IJ's voluntariness determination without requesting the transcript or referring to the audio recording of the March 15, 2016, hearing, even if merely to confirm the IJ's determination was not clearly erroneous.  But Flores-Panameno could have contested the IJ's determination by requesting a transcript or by citing to portions of the audio recording.  She did not do either.[5]

We see Flores-Panameno's failure to provide a transcript or citations to the recording as similar to an appellant's failure to comply with Rule 10(b) of the Federal Rules of Appellate Procedure, which provides that it is the appellant's duty to provide us with any necessary transcript.  We have previously found that,

---

[5] In fact, she conceded that the IJ "followed proper procedure to grant voluntary departure."

10

although the appellant's failure to order a transcript of a hearing "greatly hamper[ed] our review," we could still review an appeal where the district court memorialized its findings in a written order. *See United States v. Milam*, 855 F.2d 739, 741 n.3 (11th Cir. 1988). We noted, however, that we were "not inclined to give appellants the benefit of any doubt in the absence of a transcript which they should have ordered." *Id.* And in *United States v. LeSpesa*, 956 F.2d 1027 (11th Cir. 1992), we held omissions from the record do not require reversal when the district court is able to reconstruct the record adequately. *Id.* at 1034–35. In line with these cases, we hold that we can review an alien's petition for review asserting lack of voluntariness without a transcript where the IJ has adequately reconstructed the record. When an alien has not exercised her right before the BIA to request a hearing transcript or to cite to portions of the audio record, we will accept any uncontested factual findings adequately memorialized by the IJ.

**2.**

Because Flores-Panameno had the burden of establishing ineffective assistance of counsel, if she believed the record of the March 15, 2016, hearing was helpful to her voluntariness argument, she was obligated to request the transcript or cite to the audio recording. Because she did neither, we turn to the record the IJ recreated in his order.

11

The IJ ably recreated in his order the record of the March 15, 2016, hearing. Nevertheless, we are unclear whether the recreation reflects the entirety of the hearing. Without the IJ expressly stating the scope of his recreation, we are uncertain whether the record has been adequately reconstructed. *Cf. LeSpesa*, 956 F.2d at 1034–35. For example, the IJ describes the various steps he undertook to ensure voluntariness. But given Flores-Panameno's argument—that she was coerced by her attorney's threat of immediate deportation—it would be helpful to know if the IJ asked any questions other than the ones he noted. For example, did the IJ ask if Flores-Panameno had any questions or concerns? An open-ended question such as that one could have prompted her to inquire about the veracity of her attorney's advice.

Perhaps the IJ did ask other questions. But again, we do not know. We therefore grant Flores-Panameno's petition for review and remand for the BIA to determine the scope of the IJ's recreation of the record.

**PETITION GRANTED; REMANDED.**