[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12231
Non-Argument Calendar

_____

Agency No. A209-391-985

WIDNER ANTHONY LEONARD,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 27, 2021)

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Widner Anthony Leonard seeks review of the Board of Immigration

Appeals' order affirming the immigration judge's denial of his applications for

asylum, statutory withholding of removal, and protection under the United Nations

Convention Against Torture.  Because we agree that Leonard was not eligible for these forms of relief, we deny his petition.

I.

Leonard, a native and citizen of Haiti, entered the United States in 2016 and applied for admission.  Because he did not possess valid entry documents, the Department of Homeland Security charged him with removability.  Leonard admitted the factual allegations in his notice to appear but applied for asylum, statutory withholding of removal, and protection under CAT.

In support of his applications, he alleged that he had been "harmed and menaced a lot of times" in Haiti because he supported a political party known as the Struggling People's Organization.  According to Leonard, a man named Jacques Stevenson Thimoleon—the "Minister of Planning" in Haiti—sent "bandits" to threaten Leonard into supporting the opposing political party, the Tet Kale Party.  He said that Thimoleon's men severely beat him and threatened to kill him if he did not leave Haiti.  Leonard did not go to the police about these incidents; instead, he fled the country.

The immigration judge held a hearing on Leonard's applications for relief.  At the hearing, Leonard said that the Tet Kale Party had attacked his family and recently killed his father for not turning him in.  The immigration judge asked Leonard why he had not mentioned his father's death before; Leonard replied that

he only answered questions he was asked.  Leonard then conceded that there was no evidence in the record—other than his own testimony—to show that Thimoleon existed.  When asked why he did not submit medical records to corroborate his claimed attacks, Leonard said that he did not have the phone number for the hospital.  He also admitted that his siblings could read and write but that he had not submitted letters from any of them in support of his requests for relief.

The immigration judge found Leonard removable as charged and denied his applications for relief, concluding that his testimony was not credible and his allegations were not corroborated.  The Board affirmed; it agreed that Leonard did not provide sufficient evidence of his eligibility for relief.  This petition followed.

II.

We review our subject matter jurisdiction de novo.  *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006).  Where we have jurisdiction, we review only the decision of the Board except to the extent the Board expressly adopts the immigration judge's decision.  *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019).  Insofar as the Board adopts the immigration judge's reasoning, we review the immigration judge's decision too.  *Id.*

We review legal conclusions de novo and factual findings under the substantial evidence test.  *Lopez v. U.S. Att'y Gen.*, 914 F.3d 1292, 1297 (11th Cir. 2019).  Under the substantial evidence test, we will affirm the agency's factual

3

findings so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). We cannot reverse a determination regarding the availability of corroborating evidence unless we find that a reasonable trier of fact would be "compelled to conclude" that such evidence was unavailable. 8 U.S.C. § 1252(b)(4).

### III.

An asylum applicant must establish with specific and credible evidence past persecution on account of a statutorily listed factor or a well-founded fear that the statutorily listed factor will cause future persecution. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005). The standard for statutory withholding of removal is higher than that for asylum, so where an applicant cannot meet the burden for asylum, he necessarily cannot meet the burden for withholding of removal. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1249 n.3 (11th Cir. 2006).

An applicant's testimony, if credible, may be sufficient to meet his burden for asylum. 8 U.S.C. § 1158(b)(1)(B)(ii); 8 C.F.R. § 208.16(b). But if the immigration judge determines that an applicant should provide evidence to corroborate his testimony, then the applicant must provide the corroborating evidence unless he does not have it and cannot reasonably obtain it. 8 U.S.C.

4

§ 1158(b)(1)(B)(ii).  An applicant's failure to corroborate his testimony can be fatal to his asylum application.[1]  *Forgue*, 401 F.3d at 1287.

The weaker an applicant's testimony, the greater the need for corroborative evidence.  *See Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005).  And as the Board and immigration judge explained, Leonard's testimony was weak and often contradictory.  He was inconsistent, for example, about the circumstances of his father's death—something that went to the "very heart of his claim."  He was also inconsistent about whether he was threatened with handguns in Haiti.  So regardless of credibility, the agency acted properly in requiring reasonably available corroborative evidence.  *Id.*

But Leonard did not present any evidence to corroborate his testimony that he was persecuted in the past or had a well-founded fear of future harm.  He did not provide, for example, evidence from the Struggling People's Organization, his mother, his siblings, or his other relatives to corroborate his party membership, his political activities, the alleged attacks, Thimoleon's existence, or the fact or cause of his father's death.  Instead, the record included only his Haitian passport, a Haiti Country Report, Leonard's asylum application, and notes taken by an immigration

---

[1] We address only the Board's conclusion that Leonard did not meet his burden of sufficiently corroborating his claims.  Because the Board did not consider whether Leonard's claim should be wholly rejected due to lack of credibility or whether he was previously firmly resettled in Brazil, we do not address those issues either.  *Flores-Panameno*, 913 F.3d at 1040.

officer during his credible fear interview.  The immigration judge specifically asked Leonard about various pieces of corroborative evidence during his hearing; he responded that he could have provided additional evidence but "didn't know" he was supposed to.  He also said that he had fled Haiti too quickly to gather the evidence himself and that his family has a lot "going on right now."

None of Leonard's proffered explanations for his failure to provide the required corroborating evidence show that it was not reasonably obtainable.  As the immigration judge pointed out, Leonard could have contacted his relatives or other organization members once he arrived in the United States for supporting statements.  Given Leonard's allegations that his mother was present for a stabbing incident and that he fled to his aunt's house shortly after being threatened, it was reasonable for Leonard to seek out letters from his family to corroborate those claims.  *See In re J-Y-C-*, 24 I. & N. Dec. 260, 265 (BIA 2007).  Moreover, although Leonard testified that he did not have the contact information for the hospital he was treated at, he could have accessed this information through his own research or by reaching out to relatives once he arrived in the United States.  Even if Leonard did not know he needed to provide this corroborating evidence, he failed to show that any of this information was *unavailable* to him, as required by the Act.  *See id.* at 266; *see also* 8 U.S.C. § 1158(b)(1)(B)(ii).

6

Taking all of this together, we conclude that substantial evidence supported the agency's determination that Leonard could have reasonably obtained corroborating evidence to support his request for asylum. That means that the Board did not err in affirming the immigration judge's denial of Leonard's applications for asylum and statutory withholding of removal.

IV.

Leonard also challenges the immigration judge's denial of protection under CAT.[2] An applicant seeking protection under CAT must establish that it is more likely than not that he would be tortured by or with the acquiescence of government officials if forced to return to the proposed country of removal. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). Leonard's CAT claim rests on the same factual basis as his asylum and statutory withholding of removal claims. So because we find that he did not sufficiently corroborate his testimony that he had a well-founded fear of persecution in Haiti, we similarly find that he did not show that it was more likely than not that he would be tortured by government officials if forced to return. *Id.*

\*      \*      \*

---

[2] The government contends that Leonard did not exhaust this claim. 8 U.S.C. § 1252(d)(1). But in his brief to the Board, Leonard specifically challenged the immigration judge's denial of CAT protection and alleged that he would be killed by a government official if forced to return to Haiti. This was sufficient to exhaust available administrative remedies for this claim. *See Amaya-Artunduaga*, 463 F.3d at 1250.

Substantial evidence supports the agency's decision to deny Leonard's requests for relief, so we deny Leonard's petition for review.

**PETITION DENIED.**