[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 18-14307

Non-Argument Calendar

_____

EDGUIN PEREZ-GARCIA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

—————————————

No. 20-11381

Non-Argument Calendar

—————————————

EDGUIN PEREZ-GARCIA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

—————————————

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A094-800-347

—————————————

Before JORDAN, JILL PRYOR, and NEWSOM, Circuit Judges.

PER CURIAM:

Edguin Perez-Garcia, a native and citizen of Honduras, seeks review of the Board of Immigration Appeals' ("BIA") orders affirming the Immigration Judge's ("IJ") denial of his application

for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") and denying his motion to reopen removal proceedings. After careful review, we dismiss his petition seeking review of the BIA's decision on his CAT claim because he failed to exhaust the argument he now raises. We grant his petition seeking review of the denial of his motion to reopen, vacate the BIA's decision, and remand because the BIA failed to give reasoned consideration to Perez-Garcia's central argument in support of that motion.

## I.

Perez-Garcia first entered the United States in 2006; he was removed that same year. As relevant to this case, Perez-Garcia re-entered in 2012, and the Department of Homeland Security issued him a notice of intent to reinstate his prior removal order, charging him as removable based on that prior removal order under the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(5).

Perez-Garcia underwent a reasonable fear interview and was found to have established a reasonable fear of torture should he return to Honduras. During the interview, Perez-Garcia told an immigration officer that in February 2012 he was working at a warehouse in Honduras when a police officer named Nectari and five or six other men broke down the door, pointed their guns at him, sprayed him with tear gas, tied him up, threw him in a trash can, and threatened to set him on fire. At the time, Nectari was wearing a police shirt displaying his name. After throwing Perez-

Garcia in the trash, the assailants stole tools and a truck. Nectari and the other assailants then tried to light Perez-Garcia on fire, but a coworker "came and shot in the air." AR at 317.[1] Perez-Garcia "ran off," but his coworker was shot. AR at 318. Perez-Garcia told immigration officer that his assailants were at the warehouse for "[a]bout two hours" before leaving. *Id.* at 317.

Perez-Garcia told an "engineer" who supervised work at the warehouse what happened and that he was afraid to return to work. *Id.* at 318. "[T]he owner [of the warehouse] made a report" to the police, but the police did not do anything in response. *Id.* The engineer "said it was not convenient for" Perez-Garcia to be in Honduras, so Perez-Garcia decided to leave and come to the United States. *Id.* at 319. Perez-Garcia also learned that his coworker was killed in May 2012—the same month he departed for the United States—by the same assailants who robbed the warehouse.

The immigration officer found Perez-Garcia's testimony credible and concluded that he had a reasonable fear of torture. The officer therefore referred his case to an IJ.

As relevant to this case, Perez-Garcia applied for CAT relief.[2] Represented by his then-attorney James Levin, Perez-Garcia

---

[1] "AR" refers to the Administrative Record.

[2] Perez-Garcia also applied for withholding of removal, but he has expressly abandoned this claim in his brief before this Court.

testified before an IJ regarding his CAT application, detailing the February 2012 incident at the warehouse where he worked as a guard. Perez-Garcia testified that Nectari, a policeman, arrived with other armed men to rob the warehouse of the tools it was storing. Perez-Garcia recognized Nectari from the community and because Nectari was wearing a police shirt with his name on it. Nectari put tear gas in Perez-Garcia's eyes, then the men tied his hands behind his back, threw him in a trash can, and "were going to light it on fire." AR at 235. The men said they were going to kill Perez-Garcia and his coworkers. A coworker, Gregorio Chavez, "was screaming no, no." *Id.* Chavez was shot but managed to escape. Perez-Garcia, who was blinded by the gas for "[m]ore or less . . . 15 minutes," also managed to flee; meanwhile, the men "stole everything." *Id.* at 240–41. On cross-examination, Perez-Garcia clarified that, from the moment of Nectari's arrival until the moment of Perez-Garcia's escape, about 15 minutes elapsed. Perez-Garcia explained that when he told the reasonable fear interviewer that the attack had lasted two hours, he had been confused due to all of the questions.

After the incident, Perez-Garcia's "parents . . . placed a report," but he "never heard anything." *Id.* at 236. When confronted with his statement during his reasonable fear interview that the warehouse's owner filed a report, Perez-Garcia said that he did not know "exactly" who filed it, but "[s]upposedly" the owner filed a report "together" with his parents. *Id.* at 255.

Perez-Garcia, knowing the men were looking for him, fled. He testified that he never returned to talk to his "boss." *Id.* at 261. The IJ responded, "[W]hy does your interview say that you told your boss what happened and that you quit because you were too afraid to work there anymore," and Perez-Garcia said that he did not speak to his boss, but his parents did. *Id.* at 261.

Since his departure, Perez-Garcia testified, Nectari and his men had been threatening his parents and had come to his parents' house five or six times looking for him. And in May, the men killed Chavez—"they removed part of his face." *Id.* at 253. Perez-Garcia testified that he would be unable to return to any other part of Honduras because his attackers had connections to other policemen and because violence was rampant in Honduras. Perez-Garcia offered no evidence to corroborate his testimony.

The IJ denied Perez-Garcia CAT relief. The IJ found Perez-Garcia not credible, reasoning that "the inaccuracies and inconsistencies" in his testimony "*and* further the lack of any corroborating evidence or corroborating testimony weighed heavily on the . . . decision that [Perez-Garcia] was not credible." *Id.* at 192. In a summary of the evidence, the IJ noted some purported inconsistencies, including the length of time the assailants were at

the warehouse (15 minutes or 2 hours) and who filed the police report (Perez-Garcia's parents or the owner of the warehouse).[3]

The IJ further found that in addition to his failure to testify credibly, Perez-Garcia had failed to "provide[] any evidence that it is more likely than not that he would be tortured if returned to Honduras" because "the alleged harm he fears would be at the hands of private actors or actors not acting under color of law or with the consent or acquiescence of a public official or other person acting in an official capacity," as CAT requires. *Id.* at 194–95. Even if Nectari were, as Perez-Garcia alleged, a police officer, the evidence showed that Nectari and his men's "only purpose" was "to commit criminal acts and they were doing so solely in their individual capacit[ies] and not under color of law or under some sort of acquiescence from a government official." *Id.* at 195. And Perez-Garcia had "failed to show . . . that he is unable or unwilling to relocate within Honduras" as CAT requires. *Id.*

Perez-Garcia, still represented by Levin, appealed to the BIA. Most of Perez-Garcia's three-page argument section concerned a claim not relevant to this case. As to his argument that

---

[3] We note that Perez-Garcia vigorously disputes whether these are in fact inconsistencies. For example, he argues that he consistently testified that 15 minutes passed between his assailants' arrival and his escape but that the assailants were at the warehouse for two hours. And, he argues, although he initially testified that the warehouse's owner filed the police report, he later clarified that it may have been both the owner and his parents.

the IJ erred in denying him CAT relief, Perez-Garcia argued only this:

> [Perez-Garcia] has met the evidentiary burden of proof and persuasion to show that it is more likely than not that he would be tortured as defined in the regulations . . . .
>
> Nectari was clearly shown to be a police officer.
>
> As such he was a public official acting under color of law.
>
> [Perez-Garcia], in these circumstances is more likely than not to be tortured if returned to Honduras.
>
> He could not be expected to get any assistance from the police or other government official, no matter where he chose to live in Honduras.

AR at 161–62. Perez-Garcia said—in reference to a different claim not at issue here—that he had provided "dates" and "specific details and locations." *Id.* at 161. And, he said, "obtaining . . . the required documents to support his application . . . would have put him in extreme danger." *Id.*

The BIA affirmed the IJ's decision. The BIA noted that Perez-Garcia "d[id] not meaningfully challenge the [IJ's] adverse credibility finding on appeal." *Id.* at 151. Nonetheless, the BIA addressed and upheld the IJ's adverse credibility determination. Specifically, the BIA said, the IJ, "when considering the totality of the

circumstances and all relevant factors, based his adverse credibility finding on specific and cogent reasons, including inconsistencies between the applicant's testimony and the reasonable fear interview." *Id.* at 150. This included inconsistencies about the length of time the February 2012 incident lasted, who filed the police report, and whether he had any "communication with his supervisor following the incident." *Id.* at 151.

The BIA also concluded that the IJ correctly determined Perez-Garcia's claim for relief was due to be denied because he failed to provide "reasonably available corroborative evidence" that he would "be tortured in Honduras." *Id.* at 151–52. Plus, the BIA found, there was "no clear error" in the IJ's determination that Perez-Garcia failed to show it was more likely than not that he would "be tortured by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* at 152. Nectari's "private act of vengeance" as "a corrupt police officer" would not be "torture by a public official or other person acting in an official capacity." *Id.* And there was no evidence "that Honduran government officials would acquiesce to this corrupt official's actions." *Id.* at 152–53.

Perez-Garcia petitioned this Court for review of the BIA's decision. While his petition for review was pending, he filed, through new counsel, a motion to reopen his proceedings with the BIA. In his motion to reopen, he argued that Levin had rendered ineffective assistance of counsel by failing to obtain and present corroborating evidence to the IJ, or to explain why such evi-

dence was unavailable, and that as a result the IJ found Perez-Garcia not credible. Perez-Garcia argued that but for Levin's deficient failure to obtain and present corroborating evidence, it was reasonably probable that he would have been found credible, and so the outcome of his CAT claim would have been different. Relatedly, Perez-Garcia argued that Levin had been deficient in failing to present evidence of Honduran country conditions, a failing that, he argued, compounded the effect of Levin's deficient performance in failing to obtain and present corroborating evidence.

Perez-Garcia further argued that Levin rendered ineffective assistance during proceedings before the BIA. He argued that Levin's brief to the BIA did not sufficiently focus on the IJ's adverse credibility finding as to his CAT claim and that as a result the BIA concluded that Perez-Garcia had not meaningfully challenged that finding. And, he argued, because Levin had deficiently failed to submit to the IJ any country conditions evidence, the BIA relied on the absence of such evidence to affirm the IJ's judgment. This, Perez-Garcia contended, compounded the errors Levin's deficient performance caused before the IJ.

Perez-Garcia attached several exhibits to his motion to reopen, including a sworn declaration in which he stated that Levin never told him he needed corroborating evidence and a 2016 Human Rights Report on Honduras, which detailed the country's struggle with police corruption.

The BIA denied Perez-Garcia's motion to reopen.[4] The BIA found that Levin's performance was deficient, noting that the "deficiencies [Perez-Garcia identified] are evident in the record of proceedings." *Id.* at 4. But, the BIA concluded, Perez-Garcia had failed to demonstrate that Levin's deficiencies prejudiced his case. *Id.* The BIA had *sua sponte* evaluated the IJ's adverse credibility determination, and Perez-Garcia had not identified "any arguments his prior counsel should have raised in challenging" that determination. *Id.* Moreover, although Perez-Garcia claimed that Levin's failure to submit corroborating evidence "was the primary reason for the [IJ's] adverse credibility determination, the [BIA] analyzed credibility and corroboration separately." *Id.* "Thus, *the [BIA's] analysis of the [IJ's] adverse credibility determination was unaffected by [Perez-Garcia's] prior counsel's failure to submit corroborating evidence.*" *Id.* (emphasis added).

In addition, because the BIA had affirmed the adverse credibility determination, Perez-Garcia was not prejudiced by Levin's failure to submit country conditions documents. "Without credible testimony, this general country conditions evidence would be insufficient" to satisfy CAT's requirements. *Id.*

---

[4] Acknowledging that his motion was untimely, Perez-Garcia sought equitable tolling to file his motion to reopen. The BIA agreed that he was entitled to equitable tolling and treated his motion as timely. The timeliness of the motion to reopen is not at issue here.

Perez-Garcia petitioned this Court for review of the BIA's denial of his motion to reopen. We consolidated the two petitions for review and address them both here.

## II.

We review our own subject matter jurisdiction *de novo*. *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 866 (11th Cir. 2018). Although we retain jurisdiction over final orders of removal, we may review a final order of removal only if a noncitizen "has exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1). The exhaustion requirement is jurisdictional and precludes review of a claimant's argument that was not presented to the BIA. *Lin*, 881 F.3d at 867–68. And the exhaustion requirement applies even when the BIA addresses an issue *sua sponte*. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006).

We review the BIA's denial of a motion to reopen removal proceedings for an abuse of discretion. *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019). "Our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Id.* (internal quotation marks omitted). However, absent reasoned consideration and adequate findings, we must remand for further proceedings. *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019). Whether the BIA expressed reasoned consideration for its decision is reviewed *de novo. Lin*, 881 F.3d at 872.

### III.

Perez-Garcia has presented two petitions for review. The first, a petition for review of the BIA's decision to affirm the IJ's denial of his request for CAT relief, must be dismissed because he failed to exhaust the argument he advances before us. The second, a petition for review of the BIA's denial of his motion to reopen, is due to be granted because the BIA failed to afford reasoned consideration to the central argument of his motion. We analyze each petition in turn.

### A.    Request for CAT Relief

In his first petition for review, Perez-Garcia challenges the BIA's denial of CAT relief. To be eligible for CAT relief, a noncitizen must show it is more likely than not that he will be tortured if removed to his country of removal. 8 C.F.R. § 208.16(c)(2). In this context, "torture" means "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" for various purposes, including to intimidate, coerce, punish, or discriminate against him, "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 208.18(a)(1).

Perez-Garcia argues that the BIA's upholding of the IJ's adverse credibility determination was not supported by substantial evidence and must be reversed. *See Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012) ("Factual determinations,

including credibility determinations, are reviewed under a substantial evidence standard, which provides that the decision can be reversed only if evidence compels a reasonable factfinder to find otherwise." (internal quotation marks omitted)). He further argues that the BIA erred in ruling that he failed to explain why he lacked corroborating evidence. Finally, he argues that the BIA applied the wrong legal standard for analyzing the state action prong of CAT.

Anticipating a challenge to his exhaustion of these issues before the BIA, Perez-Garcia argues that he sufficiently raised them. He asserts that by arguing to the BIA that he had provided "credible, specific and detailed" testimony, including by providing "dates, specific details and locations," AR at 161, he sufficiently challenged the adverse credibility determination. Further, Perez-Garcia contends, he argued before the BIA that obtaining corroborating evidence "would have put him in extreme danger," so the BIA erred in ruling that he failed to explain the lack of corroborating evidence. *Id.* And, he argues, he sufficiently raised a challenge to the BIA's state action analysis by arguing that torture by Nectari, a "corrupt police official" whom the Honduran government "protects," would be with the acquiescence of the Honduran government. *Id.* at 162.

Although not stringent, exhaustion requires that the petitioner "previously argued the core issue now on appeal before the BIA." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (internal quotation marks omitted). "Unadorned, concluso-

ry statements do not satisfy this requirement." *Id.* "Though exhaustion does not require a petitioner to use precise legal terminology or provide a well-developed argument" in support of his claims, "it does require that [he] provide information sufficient to enable the BIA to review and correct any errors below." *Id.* (internal quotation marks omitted, first alteration adopted). Except for purely legal questions, "the BIA cannot review and correct errors without the petitioner first providing [his] argument's relevant factual underpinnings." *Id.* at 1298. Further, merely identifying an issue to the BIA is insufficient to exhaust a petitioner's claims, as the petitioner must also "set out any discrete arguments [that] he relies on in support of" those claims. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016).

We lack jurisdiction over Perez-Garcia's arguments regarding the denial of CAT relief because he failed to exhaust them before the BIA. Although his brief to the BIA cursorily referenced the issues that he now raises, it did so either in a conclusory manner without substantive argument or without any discussion of the material facts on which he now relies. Unlike his arguments before us, his brief to the BIA did not identify any factual support to explain any purported inconsistencies in his testimony or why he could not corroborate his story regarding the warehouse incident. Further, merely identifying the issue of whether the assailant acted under the color of law was insufficient to exhaust the specific arguments that he now presents in his brief. Thus, we

dismiss Perez-Garcia's petition for review of the merits of his CAT claim.

### B.    Motion to Reopen

Perez-Garcia also challenges the BIA's denial of his motion to reopen. He asserts—and the government does not dispute— that the BIA correctly determined that Levin's performance before the IJ and BIA was deficient. But, he says, the BIA wrongly concluded that Levin's deficient performance had not prejudiced him. Perez-Garcia asserts that the BIA "ignore[ed his] central argument"—that Levin's failure to produce any corroborating evidence (or explain the lack of such evidence) led to the IJ's adverse credibility determination and, therefore, its merits denial. No. 20-11381 Petitioner Br. at 46. We agree.

"[W]hen a decision of . . . the BIA is so lacking in reasoned consideration and explanation that meaningful review is impossible, we have granted petitions for review, vacated agency decisions, and remanded for further proceedings." *Jeune*, 810 F.3d at 803 (citing *Indrawati*, 779 F.3d at 1302); *see Lin*, 881 F.3d at 875 (applying the "reasoned consideration" standard to arguments on a motion to reopen). "When assessing whether a decision displays reasoned consideration, we look only to ensure that . . . the BIA considered the issues raised and announced [its] decision[] in terms sufficient to enable review." *Indrawati*, 779 F.3d at 1302. "[O]ur reasoned-consideration examination does not amount to a review for whether sufficient evidence supports the decision of the BIA." *Id.* (alteration adopted) (internal quotation marks omit-

ted). "That is to say, when we remand for lack of reasoned consideration, it is not because we have reviewed the BIA's decision and disagreed with its legal conclusions and factual findings." *Id.* "Rather, we have determined that, *given the facts and claims in the specific case before the . . . BIA*, the agency decision is so fundamentally incomplete that a review of legal and factual determinations would be quixotic." *Id.* "Our inquiry concerns process, not substance; we look to see that the agency heard and thought and not merely reacted." *Id.* (internal quotation marks omitted). Among other reasons, we will conclude that an agency decision lacks reasoned consideration when it "provides justifications for its decision . . .which do not respond to any arguments in the record." *Jeune*, 810 F.3d at 803.

In making its adverse credibility determination, the IJ identified inconsistencies in Perez-Garcia's accounts of the February 2012 incident (and its aftermath) *and* Perez-Garcia's failure to provide corroborating evidence, a fact that "weighed heavily" in the IJ's consideration of his credibility. AR at 192. The BIA concluded that Levin was deficient in failing to obtain and provide such corroborating evidence. But the BIA failed entirely to consider Perez-Garcia's argument that, had Levin produced corroborating evidence (or adequately explained its unavailability), the IJ's analysis would have been fundamentally altered. Because the IJ bundled the presence or absence of corroborating evidence with the consistencies and inconsistencies in Perez-Garcia's testimony, Perez-Garcia argued in his motion to reopen, the production of

corroborating evidence likely would have resulted in a finding that Perez-Garcia *was* credible. Given a positive credibility determination, Perez-Garcia further argued, it is reasonably probable that either the result before the IJ or before the BIA would have been different.

Instead of addressing this argument, the BIA focused on its own determinations on appeal from the IJ's denial of relief. But the BIA failed to account for Perez-Garcia's argument that its analysis likely would have been very different if the IJ had concluded that Perez-Garcia was credible. The BIA was not tasked with conducting *de novo* review of fact-finding; rather, it was to review for clear error the IJ's factual finding regarding credibility. Because the BIA failed to consider these arguments—arguments that were central to Perez-Garcia's motion to reopen—we grant the petition, vacate the BIA's decision, and remand for further proceedings. *See Jeune*, 810 F.3d at 803; *Indrawati*, 779 F.3d at 1302.

## IV.

For the foregoing reasons, we dismiss the petition for review through which Perez-Garcia challenges the BIA's affirmance of the IJ's denial of CAT relief. We grant the petition for review of the BIA's denial of Perez-Garcia's motion to reopen and remand for further proceedings consistent with this opinion.

**PETITION DISMISSED; PETITION GRANTED.**