**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-12225
Non-Argument Calendar
_____

MARIA VIRGINIA RODRIGUEZ ROBLES,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-453-425
_____

_____

No. 24-10065
Non-Argument Calendar
_____

MARIA VIRGINIA RODRIGUEZ ROBLES,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-453-425
_____

Before BRANCH, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

In this consolidated case, Maria Virginia Rodriguez Robles challenges the Board of Immigration Appeals's order affirming the denial of her cancellation of removal application[1] and its order denying her motion to reopen the removal proceedings.[2] We affirm.

**I.**

Rodriguez Robles entered the United States without inspection in June of 2002, and the Department of Homeland Security filed a Notice to Appear against her with the immigration court in July of 2018. It charged her with removability as "an alien present in the United States without being admitted or paroled" under 8 U.S.C. § 1182(a)(6)(A)(i). Rodriguez Robles appeared before an

_____

[1] Case No. 23-12225.

[2] Case No. 24-10065.

immigration judge ("IJ") and conceded that she was removable as charged. The IJ directed Mexico as the country of removal based on the Department's recommendation after Rodriguez Robles failed to designate a removal country.

In 2019, Rodriguez Robles filed an application for cancellation of removal under 8 U.S.C. § 1229b(b), arguing that her removal would cause exceptional and extremely unusual hardship to her U.S.-citizen children.

The merits hearing for the application primarily focused on her 16-year-old daughter, Amy. Amy was diagnosed with an adjustment disorder, depression, and anxiety following two separate incidents when she was 12 years old. In the first, her then-18-year-old cousin "touch[ed] her incorrectly." In the second, she was suspended from school for a week and bullied by her peers after sending "inappropriate" photos of herself to her "boyfriend," an older student at school, when he pressured her to do so. Amy was "very self-conscious" as a result, but she attended therapy twice a week for approximately "four to six months" and became involved in her church, which helped her heal. Amy attended one more therapy session three years later, but she is not engaged in ongoing treatment and has no long-term mental health care plan. She faces no criminal charges for the incident at school.

In the hearing, Rodriguez Robles further testified that her husband worked but that she did not and that she had good relationships with all her children. She maintained that she would take the children with her if she were removed to Mexico because,

though her husband could financially support them, he would be unable to take care of them due to his work schedule. In Mexico, Rodriguez Robles and her children would live in a small town with her family, which, based on information from her family, Rodriguez Robles believed did not have access to schools or hospitals that provided the types of services Amy would need. She testified that her two older children spoke "a little bit" of Spanish and that the two youngest did not but that the children could become proficient if they practiced the language. None of her children have medical conditions or diseases, and, though Amy has depression, she is not taking any medications.

The IJ denied the application for cancellation of removal because Rodriguez Robles did not meet the exceptional and extremely unusual hardship standard. The IJ explained that the children would not experience a familial separation because Rodriguez Robles would take them with her to Mexico, and they would be able to adjust to life there as they had been there before, understood some Spanish, and were young enough that they could become proficient in the language "rather quickly." They would also have Rodriguez Robles's family there for support. The IJ went on to state that, though the children may have better educational opportunities in the United States, that is "not in and of itself a factor that shows an exceptional or extremely unusual hardship." The children were also healthy, with no "medical impediments that require any type of medical care in the United States," and, though Amy has dealt with a lot, she was not engaged in ongoing mental health treatment or taking any medications, and she appeared to

"have been coping with her own mental health." The IJ further stated that though Rodriguez Robles and her children may face a lower standard of living in Mexico, that is not, by itself, an exceptional and extremely unusual hardship. The IJ ultimately concluded that Rodriguez Robles had failed to establish "that her qualifying relatives would suffer hardship that is substantially different from or beyond that which would ordinarily normally be expected" with a deportation and, thus, denied her application.

Rodriguez Robles appealed the decision to the Board and filed a motion to remand the case for further proceedings. She argued that the IJ failed to take "all her circumstances into consideration" before denying her application; she recounted her previous testimony and added that her family in Mexico was living in poverty, so they would not be able to help her, and that her son had "developed lots of problems," including a learning disability, and was recommended for additional cognitive and psychological testing. The Board, in a single-judge decision, dismissed her appeal, stating that the IJ had "considered and discussed the relevant factors and applied controlling legal authority" and that his decision was correct. The Board also denied her motion to remand for further proceedings, because the records about her son's problems were available during the previous hearing, so they should have been brought up then, and because they did not support the ailments that she alleged. Rodriguez Robles appeals to this Court.[3]

---

[3] This appeal created Case No. 23-12225.

6                    Opinion of the Court                    23-12225

Rodriguez Robles later filed another motion with the Board to reopen the proceedings, this time for the IJ to consider two new mental health assessments, one of Amy and one of herself. She argued that Amy's assessment showed that Amy's mental health would suffer if Rodriguez Robles were removed to Mexico and, thus, showed an exceptional and extremely unusual hardship "by the plain meaning of the words." The Board denied the motion, explaining that the new assessments were unlikely to change the outcome of the proceedings, because (1) they did not demonstrate that Amy would be unable to obtain mental health care in Mexico and (2) the evidence, in the aggregate, was still unlikely to establish an exceptional and extremely unusual hardship. Rodriguez Robles appeals that decision to this Court as well.[4]

## II.

### A.

Rodriguez Robles first argues that the Board erred in finding that she did not demonstrate that her U.S.-citizen children would experience an exceptional and extremely unusual hardship.

This Court reviews the decisions of the Board only, not the decisions of the IJ, except to the extent that the Board expressly adopts the IJ's decisions. *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019). A person deemed removable can have her removal cancelled if, among other things, the removal would cause an "exceptional and extremely unusual hardship" to the

---

[4] This appeal created Case No. 24-10065.

person's spouse, parent, or child, who is a U.S. citizen or permanent resident. 8 U.S.C. § 1229b(b)(1)(D). The application of the exceptional and extremely unusual hardship standard to found facts is an irreducibly mixed question, which this Court recently held to be "primarily factual." *Lopez-Martinez v. U.S. Att'y Gen.*, No. 23-10105, 2025 WL 2234162, at *19 (11th Cir. Aug. 6, 2025). Thus, "we review for substantial evidence the question whether the found facts in the administrative record . . . add up to an 'exceptional and extremely unusual hardship' within the meaning of § 1229b(b)(1)(D).'"[5] *Id.* at *8. In other words, the Board and IJ's determination of whether there is an exceptional and extremely unusual hardship is "conclusive" as long as it is supported by substantial evidence. *Id.* at *11. Though, the facts informing the determination "remain unreviewable." *Wilkinson v. Garland*, 601 U.S. 209, 225, 144 S. Ct. 780, 792 (2024).

An exceptional and extremely unusual hardship is one that is "substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members." *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001). It is a "very high standard," *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319, 322 (BIA 2002), that is limited to "truly exceptional" and "very uncommon" scenarios. *Monreal-Aguinaga*, 23 I. &

---

[5] Rodriguez Robles, in a brief submitted before the decision in *Lopez-Martinez*, argues that the application of the exceptional and extremely unusual hardship standard is "a quintessential question of law." In light of our Court's decision in *Lopez-Martinez*, the question is a factual one, and we apply the substantial evidence standard. 2025 WL 2234162, at *19.

N. Dec. at 59. In evaluating the hardship, the Board and IJ consider various factors in the aggregate, including the age; health; and circumstances, such as medical and educational needs, of the qualifying relatives. *Id.* And while a "lower standard of living or adverse country conditions" in the return country are relevant factors, they "generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *Id.* at 63–64.

Here, there is substantial evidence to support that Rodriguez Robles did not demonstrate that her children would experience an exceptional and extremely unusual hardship. The IJ carefully weighed the factors and found that (1) there would be limited familial separation because the children would accompany Rodriguez Robles to Mexico; (2) Rodriguez Robles has family in Mexico to help the children adjust to life there; (3) her children were young enough to become proficient in Spanish quickly; (4) the children were healthy and had no medical issues requiring ongoing care in the United States; (5) reduced educational opportunities do not, on their own, establish hardship; and (6) even if the children face adverse economic impact, that is also not enough to show hardship. The Board reviewed the IJ's decision and agreed with it. Thus, there is substantial evidence to support the decision that Rodriguez Robles did not meet the exceptional and extremely unusual hardship standard.

### B.

Rodriguez Robles next argues that the Board and the IJ incorrectly applied the exceptional and extremely unusual hardship

standard by "adding to the statute the requirement that there must not exist adequate [health care] alternatives (or any alternatives) in the home country." This argument is a question of law that we review de novo. *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1325 (11th Cir. 2021) ("[W]hether the Board applied the correct legal standard is a question of law.").

The exceptional and extremely unusual hardship standard "is based on a cumulative consideration of all hardship factors." *Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 (B.I.A. 2020). However, a "two-part test" applies when the hardship is based on the qualifying relative's health: "[T]o the extent that a claim is based on the health of a qualifying relative, an applicant needs to establish [1] that the relative has a serious medical condition and, [2] if he or she is accompanying the applicant to the country of removal, that adequate medical care for the claimed condition is not reasonably available in that country." *Lopez-Martinez v. U.S. Att'y Gen.*, No. 23-10105, 2025 WL 2234162, at *19 (11th Cir. Aug. 6, 2025) (alterations in original) (internal quotation marks omitted) (quoting *J-J-G-*, 27 I. & N. Dec. at 811). In other words, it is proper to evaluate the availability of care in the return country; it is the second part of the two-part test. Rodriguez Robles's argument conflicts with precedent and, thus, fails.

Further, to the extent that Rodriguez Robles's argument challenges our precedent as adding an incorrect step, it also fails. The Board first stated this two-part test when it explained that it engages in a "cumulative consideration of all hardship factors"

when evaluating the exceptional and extremely unusual hardship standard. *J-J-G-*, 27 I. & N. Dec. at 811. Thus, the test is not an additional requirement to be met before the factors are weighed; it simply tells the IJ and Board how to weigh them. And the Board used the test for that purpose here. It discussed all the evidence in the record, not just the availability of care in Mexico, when it determined, "considering the factors presented cumulatively," that Rodriguez Robles did not establish an exceptional and extremely unusual hardship.

## C.

Finally, Rodriguez Robles argues that the Board abused its discretion when it denied her later motion to reopen removal proceedings. She maintains that the Board should have reopened the proceedings because she provided additional psychological records and that when it didn't—in part because the records did not demonstrate that Amy could not receive mental health services in Mexico—the Board, again, applied the wrong legal standard.

This Court reviews the denial of a motion to reopen removal proceedings for an abuse of discretion. *I.N.S. v. Abudu*, 485 U.S. 94, 107, 108 S. Ct. 904, 913 (1988). The Board abuses its discretion when it exercises its discretion in an arbitrary and capricious manner. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). This standard is highly deferential, particularly in the immigration context. *Abudu*, 485 U.S. at 110 (explaining that the deference accorded to "agency decisions on petitions for reopening or reconsideration in other administrative contexts appl[ies] with even greater

force in the [immigration] context" to avoid "endless delay" of removal). However, "[t]o the extent that the [Board's] decisions were based on a legal determination, [this Court's] review is de novo." *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1252 (11th Cir. 2008). Further, a party seeking to reopen proceedings has "a heavy burden" of showing that "if proceedings before the [IJ] were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case." *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992) (internal quotation marks omitted).

Rodriguez Robles's claim that the Board incorrectly added a requirement to the exceptional and extremely unusual hardship standard is duplicative of her argument discussed in Part II.B and is rejected for the same reasons.

Her argument that the Board otherwise abused its discretion by denying her motion to reopen removal proceedings is also rejected. The Board considered the two mental health evaluations and determined that they were unlikely to change the outcome of her case because (1) they did not demonstrate that Amy would be unable to obtain medical care in Mexico and (2) the record evidence still would be unlikely to establish an exceptional and extremely unusual hardship. Of course, it is possible that other inferences could have been made, but "we can't reweigh the evidence from scratch." *Lopez-Martinez*, 2025 WL 2234162, at *22 (internal quotation marks omitted). There is "no obvious disconnect between the Board's conclusions and the contents of the

12                    Opinion of the Court                    23-12225

administrative record," *Id.*, so the Board's determination was not arbitrary and capricious. Thus, the Board did not abuse its discretion.

### III.

For the foregoing reasons, the Board's decisions are affirmed.

**AFFIRMED.**