[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12521

_____

EMMANUEL PRIVA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of Final Administrative
Removal Order
Agency No. A214-114-358

_____

Before WILSON, LAGOA, and ED CARNES, Circuit Judges.

LAGOA, Circuit Judge:

Emmanuel Priva, a native and citizen of Haiti, petitions this Court for review of his Final Administrative Removal Order and adverse reasonable fear determination, which were both issued during Priva's expedited removal proceedings as an alien convicted of an aggravated felony under the Immigration and Nationality Act ("INA") § 238(b), 8 U.S.C. § 1228(b). Under 8 C.F.R. § 208.31(g)(1), no further administrative appeal was available to Priva, but he could seek direct review by this Court. After careful review and with the benefit of oral argument, we deny the petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 2014, Priva entered the United States on an R-1 non-immigrant visa. Priva applied to adjust his status to that of conditional permanent resident, which was approved on August 25, 2017. On March 1, 2018, Priva was arrested on several counts of visa fraud and conspiracy to commit visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 371. On December 12, 2019, Priva was convicted of those counts and sentenced to twenty-seven months' imprisonment.

On March 11, 2020, the Department of Homeland Security ("DHS") issued Priva, who was serving his sentence in a federal correctional facility in Georgia, a Notice of Intent to Issue a Final Administrative Removal Order ("FARO") under INA, § 238(b), 8

U.S.C. § 1228(b). The notice of intent stated that Priva was deportable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), because he was convicted of an aggravated felony as defined in INA § 101(a)(43)(P), 8 U.S.C. § 1101(a)(43)(P). The notice also stated that Priva may be represented, at no expense to the government, by counsel. Priva acknowledged receipt of the notice and requested withholding or deferral of removal, stating that he feared persecution and torture if he was returned to Haiti. On May 14, 2020, DHS issued Priva a FARO based on the notice of intent.[1]

Priva's case was referred to an asylum officer to determine whether Priva had a "reasonable fear" of prosecution or torture. On May 19, 2020, Priva briefly sat for a reasonable fear interview, telling the asylum officer that he had an attorney to represent him. His attorney asked to reschedule the interview so he could speak with Priva first, and that request was granted. Priva was also served later in the reasonable fear interview proceedings with a list of pro bono legal service providers.

### First Reasonable Fear Interview

On May 26, 2020, Priva sat for his first substantive reasonable fear interview with an asylum officer. During this interview, Priva's counsel appeared telephonically. Priva was read, with

---

[1] This first FARO did not contain a completed certificate of service. DHS later cancelled the first FARO in July 2020 and issued Priva a second notice of intent and a second FARO on July 28 and August 13, 2020, respectively.

help from an interpreter, a M-488 form explaining the reasonable fear process. Priva stated that he understood it and had no questions about the information. He also received and signed a physical copy of that form, which had attached to it the list of pro bono legal service providers. Priva was offered "48 hours to rest and consult with family members, friends, or anyone else between the time that [he] receive[d] that information and . . . the interview," but he elected to continue. During the interview, Priva stated that he lived in Haiti from 2009 to 2011 but had not returned since 2011. Priva also stated that he was "never" physically harmed, threatened, or mistreated by anyone in Haiti.

As to "future harm," Priva asserted that he was "afraid to return" to Haiti, specifically stating:

> In the last few years I was involved in helping some folks enter the U.S. from my country. . . . The deal was you give me money and if you do not get your visa then you would get your money back. I was not able to reimburse those people because the government stole my car, my bank account, they stole everything I had. So now I'm unable to reimburse them. They know me and I know them. If I go there without being able to reimburse people there is no way that I will make it out. They are waiting for their money. They said that in their statements and emails.

Priva stated that if he could not reimburse the people he owed money to, which Priva estimated to be at least 100, he "would be

persecuted and tortured and killed." Priva claimed that he had received threats from more than twenty people. He stated that he began receiving threats in 2018 following his arrest, as the people threatening him had "googled" his name and knew he was in jail. The asylum officer asked Priva for an example of such threats. Priva responded that the individuals "cursed" him and stated that if they did not get their money back, and if he was deported back to Haiti, "then [his] life will pay for [the] money," as they could get machetes or guns. Priva also claimed that his wife used to receive "many" threatening messages. He claimed that his friends and brother were also threatened by these people.

The asylum officer asked what Priva meant when he stated he would be persecuted, to which Priva replied he could be killed with a machete, as he knew of "many groups of people" who had killed "many people before [him]." Priva also named the "group of people" he owed money to as "police officers" whom he used to deal with, or people "related to them." Priva stated that seven other people who were in the same situation were killed by the people they owed money to but that he did not know if the 100 people he owed money to had specifically killed others. He also stated that "two ministers" in Haiti had threatened him. Additionally, Priva said a police officer had sent a message to his friend a month prior stating that "with [his] gun [he doesn't] play and [he could] blow [his] mind within a second" and demanding Priva to send the money. Priva also stated that this police officer could find him because "Haiti is so small and very connected," that he

"was dealing with everybody in every single area," that the people who he owed money could see him on social media as a deportee, and that he could not hide. And he said that if someone knew his address in Haiti, the people who he owed money to could find him. Priva asserted that the Haitian government could not protect him because it was not able to "even protect itself," as civilians in the country often killed police officers and government officials. He stated that there was no other reason he feared to return to Haiti and that there was nowhere in Haiti he could live and be safe.

As to relief under the Convention Against Torture, Priva stated that he had never experienced any mistreatment, threats, or harm from anyone in the Haitian government, military, or police until he "got involved in this situation," referencing the threats from the "police officers." He also stated a "minister" working for the government had threatened to kill him because of the owed money and that he was afraid he could be harmed by public officials in the future. And he claimed that if he reported the threats, things would get "even worse" because Haitian officials and police were "corrupt." But Priva stated he never reported a crime to the police in Haiti where they refused to help him. The asylum officer asked Priva if he knew of anyone who had reported a crime to the police in Haiti, and he stated that "[i]t became worse for them," that his friend reported to the police that his girlfriend was kidnapped by a group of people and the police had killed him because the kidnappers worked for the police. Pri-

va also stated he was never threatened or harmed—and did not fear being threatened or harmed—in Haiti because of his race, ethnicity, religion, political beliefs, or nationality. And he was not a member of any groups or organizations in Haiti.

### Second Reasonable Fear Interview

On May 28, 2020, Priva attended another reasonable fear interview. Priva's counsel was present telephonically. During this interview, Priva's counsel asked Priva when he was first threatened, which Priva said occurred when he was in detention for his visa fraud conviction. During his questioning of Priva, Priva's counsel did not introduce any evidence of country conditions in Haiti.

### Third and Final Reasonable Fear Interview

On June 3, 2020, Priva had a final reasonable fear interview, where counsel was again present telephonically. The asylum officer asked Priva if he ever was directly threatened by any of the people he feared. Priva replied that he had directly spoken, with help from a friend, to a man named "Jon," who had previously sent him money. Jon called Priva "a thief" because he owed him money. Jon also stated that "he will make sure he will get his money" using "every single tool" if Priva was sent back to Haiti and that "they" would terminate Priva. Priva said that Jon, who was a police officer for seventeen years, was fired because he mistakenly killed a person and that Jon reminded him of the incident. Priva also said that Jon's brother, a police officer in Haiti, knew he

owed Jon money and claimed that Jon and his brother could "use every single tool to finish" him, as they had done it before.  Priva understood "tools" to mean that Jon had a gun.  And he stated that Jon still had close connections to the Haitian police.

### Asylum Officer's Reasonable Fear Findings

Following the final interview, the asylum officer made the following reasonable fear findings:  the asylum officer found Priva credible but concluded there was "no reasonable fear of persecution established and no reasonable fear of tortured established." In the "Reasonable Fear Determination Checklist and Written Analysis," the asylum officer found that Priva "ha[d] not demonstrated that the harm he fears in the future is on account of a protected ground," as Priva feared "he will be killed because he was paid to help the people he fears with visa's [sic] and he was unable to provide them with what they paid him for"—which was not a protected ground.[2]  While several threats were from police officers and other public officials, the asylum officer found that Priva

---

[2] We note that the asylum officer's checklist is not entirely consistent as to the torture finding.  In one area of the checklist, the asylum officer checked "Yes" as to whether Priva established a reasonable possibility of torture.  But immediately below this section of the checklist, the officer wrote his written analysis explaining why Priva "ha[d] not demonstrated that a public official would consent or acquiesce to his future torture if he returns to Haiti."  Given this subsequent written explanation and the conclusion in the reasonable fear finding that there was "no reasonable fear of torture established," we conclude that the asylum officer did not find Priva had established a reasonable possibility of torture.

could not provide evidence showing that they were acting under "the color of law." Rather, Priva's testimony showed that those officers and officials were acting as private individuals in threatening Priva, noting that the "tools" those individuals were using to threaten him—locating him and his family by using Facebook and finding out whether he was deported on the Haitian news—were "insufficient to indicate" that "the police and other public officials [Priva] fears . . . would be acting in their official capacities and not as private individuals." Additionally, the asylum officer found Priva had not shown that a public official would consent or acquiesce to his future harm, finding that (1) his claims about the Haitian police were not supported by specific evidence, (2) Priva had never reported crimes, including these threats, to the Haitian police and had them refuse to help, and (3) "Jon," the former police officer threatening Priva, was fired for an unlawful killing, showing that Haitian police would act against their own officers.

Priva requested a review by an immigration judge of the asylum officer's negative reasonable fear determination. Priva was served a notice of the referral to the immigration judge. The notice, which was read and explained to Priva, provided that Priva "may be represented in this proceeding, at no expense to the government, by an attorney or other individual authorized and qualified to represent persons before an Immigration Court" and that, if Priva wished to be represented, his attorney should appear with him at the hearing. The same day, Priva was served with a

notice scheduling his hearing for June 9, 2020, and again informing Priva he may be represented by counsel.

At the June 9, 2020, hearing, Priva appeared without counsel. The immigration judge noted that Priva was appearing *pro se* but did not inquire further into Priva's lack of counsel. The immigration judge noted that he had asked Priva before the hearing commenced what language he wanted the hearing conducted in, and Priva on the record confirmed that he wanted the hearing conducted in English. The immigration judge took testimony from Priva and confirmed that Priva understood the basis of the hearing. The immigration judge further confirmed that Priva feared being returned to Haiti based only on the threats from people to whom he owed money. Before making his finding, the immigration judge asked Priva if there was "any other reason why [Priva] believe[d] someone might harm [him] if [he went] back to Haiti?" In response, Priva testified "[j]ust because the money I owe them." The immigration judge then found that Priva had not established a reasonable possibility he would be persecuted based on a protected ground nor a reasonable possibility he would be tortured if returned to Haiti. The immigration judge stated that his decision was a final order and that no administrative appeal was available, but he noted that Priva could petition for review with this Court. The immigration judge also stated that while he believed what Priva said, those statements did not constitute grounds for withholding of removal or CAT relief. Following his ruling, the immigration judge issued an order of re-

moval, finding that Priva had not established a reasonable probability that he would be persecuted based on a protected ground or a reasonable possibility he would be tortured in the country of removal.

Priva filed this petition for review.

## II.    ANALYSIS

In his petition, Priva contends that his due process rights were violated during his expedited removal proceedings. Priva argues that he had the right to counsel during his reasonable fear proceedings before the immigration judge and also argues that the immigration judge violated this right by failing to obtain a knowing and voluntary waiver of that right from Priva. Priva also argues that he need not show that he was substantially prejudiced by the violation of the right to counsel but alternatively contends that he has shown substantial prejudice. Priva further contends that he was denied a full and fair hearing because the immigration judge failed to provide an adequate explanation of the proceedings. And Priva lastly contends that the immigration judge erred in upholding the asylum officer's finding that there was not a reasonable possibility he would be tortured if returned to Haiti.[3] We address these arguments in turn.

---

[3] Priva does not challenge the immigration judge's concurrence with the asylum officer's finding that he did not establish a reasonable fear of persecution based on a protected ground for withholding of removal under the INA. Priva has therefore abandoned any challenge to the denial of his withholding

### A.  Reasonable Fear Proceedings

Reasonable fear proceedings are part of the expedited removal proceedings for "aliens convicted of committing aggravated felonies" set forth in 8 U.S.C. § 1228.  While § 1228 does not mention "reasonable fear proceedings," the Attorney General promulgated the regulations establishing reasonable fear proceedings—8 C.F.R. §§ 208.31 and 238.1(f)(3)—in 1999 under its authority to promulgate such regulations under § 1228(b)(4).  *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8485 (Feb. 19, 1999).

The purpose of the "reasonable fear screening process" is "to provide for the fair resolution of claims both to withholding under [the INA], and to protection under the [CAT] without unduly disrupting the operation of" the "streamlined administrative removal processes for aggravated felons under" INA § 238(b) and for aliens subject to reinstatement of a previous removal order under INA § 241(a)(5).  Regulations Concerning the Convention Against Torture, 64 Fed. Reg. at 8485.  8 C.F.R. § 238.1(b)(2) provides that removal proceedings commence upon personal service on the alien of a notice of intent to issue a FARO, explaining the charges against the alien.  The alien then has the option to seek withholding of removal. *Id.* § 238.1(c)(1).  If the alien seeks withholding of removal because of a fear of torture, he is referred to

---

of removal claim.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

an asylum officer for a reasonable fear interview and determination. *Id.* § 208.31(a)–(c). When an alien is referred to an asylum officer for a reasonable fear determination, the officer "conduct[s] the interview in a non-adversarial manner, separate and apart from the general public," where the alien "may be represented by counsel . . . and may present evidence . . . relevant to the possibility of persecution or torture." *Id.* § 208.31(c). At the end of the interview, the asylum officer reviews with the alien a "summary of the material facts" and provides the alien with "an opportunity to correct errors therein." *Id.*

To succeed in establishing a reasonable fear of torture, the alien must establish "a reasonable possibility that he or she would be tortured in the country of removal." *Id.* If the asylum officer concludes that the alien has met the reasonable fear standard, the officer must refer the case to an immigration judge "for full consideration" of the alien's eligibility for withholding of removal, which is conducted with all procedural requirements attendant to removal proceedings, including appeals to the Board of Immigration Appeals. *Id.* § 208.31(e); *see also id.* § 208.16. But if an officer concludes that the alien does not have a reasonable fear of torture, then the alien may request that an immigration judge review the officer's "negative determination." 8 C.F.R. § 208.31(f)–(g). If the alien requests a review by an immigration judge, then the immigration judge is provided with the "record of determination, . . . the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based." *Id.* § 208.31(g). If the immigration judge "concurs with the asy-

lum officer's determination that the alien does not have a reasonable fear of . . . torture," the alien is removed. *Id.* § 208.31(g)(1).

The regulations provide that an "alien may be represented by counsel or an accredited representative . . ., at no expense to the Government," during the reasonable fear interview before the asylum officer. *Id.* § 208.31(c). But the regulations are silent about any right or privilege to counsel during the immigration judge's review of the asylum officer's negative determination. *See generally id.* § 208.31(g).

## B. Right to Counsel and Substantial Prejudice

Priva first contends that he is entitled to a new hearing before the immigration judge because he had a right to counsel in his reasonable fear proceedings under the Fifth Amendment to the United States Constitution. In support of his argument, Priva relies on *Zuniga v. Barr*, 946 F.3d 464, 468–70 (9th Cir. 2019), in which the Ninth Circuit found that aliens subject to the expedited removal proceedings under 8 U.S.C. § 1228 had "a right to counsel" in "reasonable fear review proceedings," *see* 8 C.F.R. § 208.31. In response, the government asserts that § 1228's plain language does not provide aliens with the right to counsel in reasonable fear proceedings. As discussed in Section II.A., § 1228 contains no language on reasonable fear proceedings; nor would it, as the statute was enacted before regulations involving those types of proceedings were promulgated to conform to the CAT. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. at 8485; 8 C.F.R. § 238.1. Although the regulations in-

volving reasonable fear screening proceedings state that an alien "may be represented by counsel" at the screening process' first step—the interview with an asylum officer, 8 C.F.R. § 208.31(c)—the regulations are silent on whether an alien may have counsel present at the second step of the screening process before the immigration judge, *id.* § 208.31(g).

That said, we need not decide whether an alien is entitled to counsel before an immigration judge in reasonable fear proceedings under § 1228 because, even if Priva had such a right to counsel, under our existing precedent, Priva must show substantial prejudice and he has failed to do so. Indeed, although "[a]liens are entitled to due process of law in deportation hearings" under the Fifth Amendment, we have long held in this Circuit that "an alien must show substantial prejudice" to prevail "on a due process challenge to a deportation proceeding." *Ibrahim v. U.S. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987); *see also, e.g.*, *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015); *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010); *De Sandoval v. U.S. Att'y Gen.*, 440 F.3d 1276, 1285 (11th Cir. 2006); *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1222 (11th Cir. 2003); *Mullen-Cofee v. INS*, 976 F.2d 1375, 1380 (11th Cir. 1992). For example, in *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036 (11th Cir. 2019), we held that while "8 U.S.C. § 1362 provides that aliens have the right to retain private counsel in their removal proceedings . . . [and] the right to effective assistance of counsel,"

16                 Opinion of the Court                 20-12521

the alien must also show prejudice. *Id.* at 1040; *see also Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1148 (11th Cir. 1999).

Additionally, in *Frech v. U.S. Att'y Gen.*, 491 F.3d 1277 (11th Cir. 2007), we held that "[w]hile deprivation of the right to counsel . . . in a removal proceeding would, under certain circumstances, constitute a due process violation, [the petitioner had] not shown that he was *substantially prejudiced by any due process violation in [the] case*." *Id.* at 1282 (emphasis added). Similarly, in *De Sandoval*, we considered the petitioner's argument that 8 C.F.R. § 241.8—regarding procedures for reinstatement of removal orders—violated her procedural due process rights because the regulation, among other things, did not "provide her the right . . . to be represented by counsel." 440 F.3d at 1285. We concluded that "[t]o establish a procedural due process violation, an alien must show the government's asserted error caused her substantial prejudice," and we also concluded in *De Sandoval* that the petitioner "fail[ed] to show how the additional procedures she demands would have changed the result in her case." *Id.* Additionally, in *Mullen-Cofee*, we noted that "to establish [a] due process violation from denial of right to counsel at deportation proceedings, [the] alien must establish that 'presence of counsel might have affected the outcome.'" 976 F.2d at 1380 (quoting *Cobourne v. INS*, 779 F.2d 1564, 1566 (11th Cir. 1986)).

Despite this Circuit's long-standing precedent, Priva cites to out-of-circuit decisions supporting his argument that substantial prejudice is not required. But "under this Court's prior-panel-

precedent rule, 'a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.'" *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)). Accordingly, we are bound by this Circuit's prior holdings that an alien must show that a due process challenge caused him or her substantial prejudice. Therefore, like other due process challenges to removal proceedings, including those based on an alien's right to counsel, we must determine whether Priva was substantially prejudiced by the lack of counsel at his June 9, 2020, hearing before the immigration judge.

Based on the record evidence before us, we conclude that Priva has not shown substantial prejudice. Under the substantial prejudice standard, the petitioner "must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." *Indrawati*, 779 F.3d at 1299 (quoting *Lapaix*, 605 F.3d at 1143). Priva contends that he was substantially prejudiced by his lack of counsel at the hearing before the immigration judge in his reasonable fear proceedings in several ways. He first argues that he was "deprived . . . of his opportunity to apply for relief under the [CAT], which was likely to be granted, based on the fact that he has a reasonable fear of torture due to death threats by senior government officials and police officers." Priva further contends that: (1) the immigration judge failed to distinguish between the forms of relief for withholding of re-

moval under the INA, which requires applicants to establish persecution or torture based on a protected ground, and for CAT, which does not require torture to be based on a protected ground; and (2) if Priva had counsel at the hearing, the immigration judge would have understood "the difference" between the two standards.

We conclude that these arguments lack merit. Reviewing the hearing transcript, the immigration judge specifically stated, "I find that you've not established a reasonable possibility that you would be persecuted on the basis of a protected ground, *or* there's . . . not a reasonable possibility that you would be tortured if you return to Haiti." The record evidence therefore shows that the immigration judge did not make his finding on torture based on a protected ground, that is, those grounds set forth for withholding of removal claims under the INA. Nor does Priva point to anything else in the record suggesting that the immigration judge improperly conflated the two standards. Indeed, the record evidence shows that Priva had the opportunity to apply for CAT relief (and did so) and that the asylum officer asked Priva questions related to CAT relief during the several reasonable fear interviews. And Priva was represented by counsel at each of those reasonable fear interviews before the asylum officer.

Priva next argues that he was substantially prejudiced "because it is questionable whether the [immigration judge] had read the record prepared by the [asylum officer] before the proceedings." Priva speculates that the immigration judge did not know

the "material facts" of his case because the judge, when referencing the "various people inside of Haiti . . . that [Priva] owed money to," did not specifically mention they were police officers or government officials. We conclude that there is nothing in the record suggesting that the immigration judge did not review the record before him in making his decision as to Priva's CAT claim.

Priva further contends that neither the asylum officer nor the immigration judge inquired into country conditions, which Priva claims was required under 8 C.F.R. § 208.30(e)(3). Priva asserts that, if he had counsel before the immigration judge, "the obvious flaws would undoubtedly have been drawn to the IJ's attention and the outcome would have been different." But Priva *did* have counsel before the asylum officer in each of his reasonable fear interviews, and Priva *did not* present evidence of country conditions in Haiti to the officer. Priva does not explain why he failed to present country condition evidence to the asylum officer during any of these reasonable fear interviews where he was represented by counsel. Also, the relevant regulation, 8 C.F.R. § 208.31(g), does not indicate that the immigration judge would have to review new evidence that Priva failed to present to the asylum officer during the reasonable fear interviews. In other words, Priva has failed to show how the presence of counsel at the hearing before the immigration judge to present country con-

dition evidence would have changed the proceedings' outcome.[4] *See Indrawati*, 779 F.3d at 1299.

We therefore find no merit in Priva's constitutional claims because he has not shown that any purported violations caused him substantial prejudice.

## C.  Explanation of the Proceedings

Priva also briefly argues that he was denied a "full and fair hearing" before the immigration judge because the judge "failed to provide an adequate explanation of the procedures, including what [he] had to prove to establish his basis for the CAT relief, and to inquire into [the] basis for the CAT relief." We disagree.

Due process of law in deportation proceedings "is satisfied only by a full and fair hearing," but the "alien must show substantial prejudice." *Ibrahim*, 821 F.2d at 1550. That said, there is no indication in the record that Priva did not understand the proceedings. At the hearing, the immigration judge asked Priva before the hearing commenced what language he wanted the hearing conducted in, and Priva on the record confirmed that he wanted the hearing conducted in English. The immigration judge

---

[4] As explained in Section II.D, we conclude that, under the substantial evidence standard, *see Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020), the immigration judge did not err in upholding the asylum officer's negative reasonable fear determination on Priva's CAT claim because substantial evidence in the administrative record supports that determination.

then stated that Priva had "already been ordered to be removed from the United States," that "an asylum officer concluded that [he did] not have a reasonable fear of persecution or torture," and that Priva had "requested that the asylum officer's decision be reviewed." The immigration judge then asked Priva if that was his "understanding of why [they were there]," to which Priva replied, "Yes. Yes, sir."

Priva also received written documents explaining the process of the hearing and that the immigration judge would be determining whether he agreed with "the [asylum officer's] determination that [Priva] d[id] not have a reasonable fear of persecution or torture." Additionally, Priva has not explained or shown how the outcome would have been different if he had "been properly informed." Indeed, Priva has not identified how he would have presented his case differently before the immigration judge. We therefore conclude that this argument lacks merit.

### D. Whether Priva Failed to Establish a Reasonable Fear of Torture in Haiti

Finally, Priva contends that the immigration judge erred in upholding the asylum officer's finding that there was "no reasonable fear of torture established" as to his claim for CAT relief. We disagree. Although we generally lack jurisdiction to review factual challenges to a final order of removal against an alien who is removable for having committed an aggravated felony, "we have jurisdiction to review factual challenges to an order denying protection under the [CAT] to that same alien." *Farah v. U.S. Att'y*

*Gen.*, 12 F.4th 1312, 1327 (11th Cir. 2021).  In reviewing a factual challenge to the denial of CAT relief, we apply the substantial evidence standard of review.[5]  *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).  Under the substantial evidence standard, which is highly deferential, the immigration judge's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)); *accord Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1261 (11th Cir. 2004) ("Under this highly deferential standard of review, the IJ's decision must be deferred to as supported by substantial evidence, unless the evidence compels a reasonable fact finder to find otherwise.").  Because the standard is highly deferential, we will reverse an agency's decision only if the record compels a contrary finding.  *Antipova*, 392 F.3d at 1261.  We also review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.  *Silva v U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006).

---

[5] We have not decided what standard of review applies to an immigration judge's negative reasonable fear determination.  The government argues that, in the case of an immigration judge's concurrence with an asylum officer's negative reasonable fear determination, this Court should apply the more deferential "facially legitimate and bona fide reason" standard of review set forth in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), instead of the more demanding substantial evidence standard.  We need not decide which standard of review applies because, even if we review for substantial evidence, the record does not compel an outcome in Priva's favor.

As a general matter, to qualify for CAT relief, "an alien must establish that he will more likely than not be tortured if removed to his country." *Farah*, 12 F.4th at 1327. In the context of the screening process for CAT claims raised in reasonable fear proceedings, however, "[t]he alien shall be determined to have a reasonable fear of . . . torture if the alien establishes a reasonable possibility that he or she would be . . . tortured in the country of removal." *See* 8 C.F.R. § 208.31(c). The applicant bears the burden of proof for establishing entitlement to CAT relief. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004); *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020).

In the CAT context, "[t]orture must be 'inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.'" *Farah*, 12 F.4th at 1327 (quoting 8 C.F.R. § 1208.18(a)(1)); *accord Lingeswaran*, 969 F.3d at 1293; *see also United States v. Belfast*, 611 F.3d 783, 804, 808 (11th Cir. 2010) (explaining that, under CAT, "there is no distinction between the meaning of the phrases 'under the color of law' and in 'an official capacity'"). "Acquiescence 'requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.'" *Lingeswaran*, 969 F.3d at 1293 (quoting 8 C.F.R. § 208.1[8](a)(7)).

We conclude that Priva's claim fails under the substantial evidence standard. *See Antipova*, 392 F.3d at 1261. The record evidence does not compel a finding that Priva established a reasonable possibility of torture at the instigation of, or with the consent of, government officials acting in an official capacity. *See* 8 C.F.R. § 208.18(a)(1)); *Antipova*, 392 F.3d at 1261. While the asylum officer noted that some individuals threatening Priva because he owed them money for failing to obtain fraudulent visas to the United States were Haitian "police officers and other public officials," the asylum officer found that Priva had failed to provide "specific and persuasive evidence to indicate that [those] individuals acted or would act under the color of law," as Priva's testimony "indicate[d] that the police and other public officials that made threats toward [him] were acting as private individuals." The asylum officer also noted that Priva testified those individuals "used Facebook to locate his family and friends to relay their threats" and would "be able to locate him because people deported through Haiti are on the news." But because those "tools" were not "only at the disposal of the police or public officials," the asylum officer found no indication the individuals would use their official positions to harm Priva.

The officer further concluded that Priva failed to show a public official would consent or acquiesce to his future harm. In noting Priva's testimony that Haitian police were corrupt and that reports to a higher officer or official could make things "worse," the officer determined that Priva failed to provide specific evi-

dence in support of his belief.  For example, Priva had never reported the threats to the Haitian police and had never reported a general crime for which the police refused to help him.  And the officer noted that "Jon," the former police officer who threatened Priva, had been fired by the Haitian police department for an unlawful killing, suggesting that the Haitian police were "willing to take action against their own officers."  The immigration judge reviewed the asylum officer's findings and similarly concluded that, as to Priva's application for CAT relief, there was not a reasonable possibility that Priva would be tortured if returned to Haiti.

Under our highly deferential review standard, we conclude that substantial evidence supports the asylum officer's and immigration judge's determinations.  While Priva testified that some individuals threatening him were Haitian police officers or public officials, Priva did not offer any examples to show that those officers and officials were threatening him in their official capacities or under the color of law.  Rather, Priva testified that the individuals were threatening him through Facebook and searching for him via Google or by watching the news in Haiti.  And during his interview, Priva stated that he did not know if any of the 100 people he owed money to had killed other individuals.  A reasonable fact finder therefore could conclude that substantial evidence supported the determination that those officers and officials were not acting in their official capacities.

Additionally, although Priva generally testified that the Haitian police were corrupt and there were high levels of violence in Haiti, as well as speculated that it could be worse for him to report the threats, Priva admitted that he had never reported a crime to the Haitian police for which they refused to help him. Priva further provided an example—"Jon"—in which a former police officer was fired from the police department following an unlawful killing, evidence suggesting that the Haitian police acts against its officers who commit unlawful acts instead of acquiescing to the unlawful conduct. *Cf. Reyes-Sanchez*, 369 F.3d at 1243. Thus, there is substantial evidence to support the finding that Haitian public officials would not consent or acquiesce to Priva's future harm if he reported the threats he received.[6]

We thus conclude that the immigration judge reasonably found that Priva's assertions failed to establish his torture claim and the record does not compel a contrary finding. We thus further conclude that substantial evidence supports the asylum officer's and immigration judge's negative reasonable fear determination on Priva's claim for CAT relief.

### III.    CONCLUSION

For all these reasons, we deny Priva's petition.

---

[6] While Priva contends that the asylum officer and immigration judge ignored the country conditions in Haiti, Priva had the burden of proof to establish entitlement to relief under the CAT, *see Reyes-Sanchez*, 369 F.3d at 1242, and he (and his counsel) failed to offer reports on Haiti's conditions at any stage of the reasonable fear proceedings.

**PETITION DENIED.**

WILSON, Circuit Judge, dissenting:

This appeal provides two questions that have yet to be directly answered in a published opinion in the Eleventh Circuit: (1) whether there is a statutory right to counsel in a reasonable fear review proceeding before an Immigration Judge (IJ); and (2) whether a petitioner alleging the violation of the statutory right to counsel must show that the purported error caused substantial prejudice. Upon review, and with the benefit of oral argument, I agree with Priva that there is a statutory right to counsel in reasonable fear review proceeding before an IJ. I further agree with Priva that where a noncitizen has been denied the right to counsel in an immigration proceeding, he or she is not required to demonstrate substantial prejudice to obtain relief. I would therefore vacate the decision of the IJ for the following reasons.

I.

The majority contends that it need not address whether a petitioner has a statutory right to counsel before an IJ during a reasonable fear review proceeding provided for in 8 C.F.R. § 208.31(g). This question, however, warrants review to clarify noncitizens rights during a reasonable fear review proceeding. I agree with Priva that during such a proceeding there is indeed a statutory right to counsel which stems from the Fifth Amendment as explained by the Ninth Circuit in *Zuniga v. Barr*, 946 F.3d 464, 469–70 (9th Cir. 2019) (per curiam) (holding that the expedited removal statute clearly "contemplates a right to counsel in removal proceedings initiated under 8 U.S.C. § 1228, which include reasonable fear review

proceedings"). I find the opinion highly persuasive and would adopt its statutory interpretation and reasoning in full.

Congress has provided that in "any removal proceedings before an [IJ]," a noncitizen "shall have the privilege of being represented" by counsel. 8 U.S.C. § 1362. Section 1228, which governs the implementation of expedited removal of noncitizens, provides that reasonable effort shall be made to ensure a noncitizen's access to counsel and right to counsel under § 1362 are not impaired. *Id.* § 1228(a)(2). Furthermore, § 1228(b) explicitly provides that a noncitizen subject to removal proceedings "shall have the privilege of being represented" by counsel. *Id.* § 1228(b)(4)(B).

Although the legal provisions requiring the government to conduct reasonable fear review proceedings are set forth in regulations, not in § 1228 itself, those regulations were promulgated pursuant to the Attorney General's authority under § 1228 and are thus part of expedited removal proceedings. Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8493–94 (Feb. 19, 1999) (citing Immigration and Nationality Act § 238(b), 8. U.S.C. § 1228 as the source of authority for regulations regarding expedited removal proceedings and reasonable fear of persecution or torture determinations). As a result, the reasonable fear proceedings to which Priva was subject "are in turn part of those expedited removal proceedings" provided for by § 1228(b). *Zuniga*, 946 F.3d at 468.

## II.

The majority further contends that a petitioner who demonstrates any procedural due process violation must nevertheless show the violation caused substantial prejudice to obtain relief. This interpretation is too broad. Especially where Priva raises a question of first impression before us which has resulted in a circuit split: whether the specific procedural violation of the denial of counsel requires a showing of prejudice.

I agree with Priva that a petitioner need not show prejudice or substantial prejudice where he or she demonstrates a due process claim specifically relating to the denial of the statutory right to counsel. As provided by the majority, we have required a showing of substantial prejudice when confronted with a variety of minor procedural due process claims. *See, e.g.*, *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1299–1300 (11th Cir. 2015) (finding no due process violation on claim that IJ impermissibly admitted and relied on evidence); *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1144 (11th Cir. 2010) (per curiam) (finding no due process violation on claim that IJ erred in considering certain evidence where petitioner did not provide certain testimony); *De Sandoval v. U.S. Att'y Gen.*, 440 F.3d 1276, 1285–86 (11th Cir. 2006) (finding no due process violation where petitioner admitted all necessary facts to warrant reinstatement of existing removal order and procedure provided under statute did not afford her an appearance before an IJ); *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987) (finding no due process

violation where petitioner was absent from his own deportation hearing).  When confronted with a more salient due process claim alleging ineffective assistance of counsel claim, we require a slightly different showing of: (1) prejudice; and (2) counsel's deficient performance.  See, e.g., Flores-Panameno v. U.S. Att'y Gen., 913 F.3d 1036, 1040 (11th Cir. 2019).  The instances of procedural due process violations above, however, are distinctly different from the procedural due process violation arising from the denial of the statutory right to counsel.

Although we have touched upon due process claims implicating the right to counsel, we have not directly decided whether a petitioner who was improperly denied a statutory right to counsel in an immigration proceeding must demonstrate that the denial resulted in either prejudice or substantial prejudice.  Frech v. U.S. Att'y Gen., 491 F.3d 1277, 1281–82 (11th Cir. 2007) (finding no due process violation where petitioner argued that IJ's denial of a change of venue violated his right to counsel even though petitioner discharged attorney weeks before the final merits hearing); Cobourne v. INS, 779 F.2d 1564, 1566 (11th Cir. 1986) (per curiam) (finding no due process violation where the petitioner voluntarily and knowingly waived his right to counsel).  This case presents us with an opportunity to clearly address this question.

The circuits are split on the question of whether a petitioner must show prejudice to prevail on a claim that the statutory right to counsel was denied.  Five circuits recognize that representation by counsel in immigration proceedings is a statutory right of such

20-12521                WILSON, J., Dissenting                5

significance that a denial of the right requires no showing of prejudice due to the fundamental importance of the right. *Montes-Lopez v. Holder*, 694 F.3d 1085, 1092 (9th Cir. 2012) ("[D]enial of counsel more fundamentally affects the whole of a proceeding than ineffective assistance of counsel . . . . [T]he absence of counsel can change [the noncitizen's] strategic decisions, prevent him or her from making potentially-meritorious legal arguments, and limit the evidence the [noncitizen] is able to include in the record."); *Leslie v. U.S. Att'y Gen.*, 611 F.3d 171, 181 (3d Cir. 2010) ("The right to counsel is a particularly important procedural safeguard because of the grave consequences of removal."); *Castaneda-Delgado v. INS*, 525 F.2d 1295, 1302 (7th Cir. 1975) ("When no lawyer appears to represent the defendant . . . there is no room for nice calculations as to the amount of prejudice flowing from the denial.") (internal quotation marks omitted); *Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991); *Cheung v. INS*, 418 F.2d 460, 464 (D.C. Cir. 1969).

In contrast, four circuits require a petitioner to show prejudice when alleging a due process violation related to the denial of counsel and do not distinguish between Fifth Amendment procedural due process claims and statutory right to counsel claims. *Njoroge v. Holder*, 753 F.3d 809, 812 (8th Cir. 2014); *Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993); *Michelson v. INS*, 897 F.2d 465, 468 (10th Cir. 1990); *Farrokhi v. INS*, 900 F.2d 697, 702 (4th Cir. 1990). "Instead, they examine alleged violations of the right to counsel more generically as a matter of procedural due process,

thereby failing to recognize the distinctive nature of the statutory right to counsel." *Hernandez Lara v. Barr*, 962 F.3d 45, 59 (1st Cir. 2020) (Lipez, J., concurring) (providing that the First Circuit should adopt the majority view but not deciding the issue).

I would join the majority of circuits in concluding that no showing of prejudice is required when a petitioner establishes the denial of the statutory right to counsel. The fundamental importance of the right to counsel, even where statutory, is too great. Because I would find that Priva was entitled to such a right throughout his reasonable fear proceedings under the reasoning in *Zuniga* and that Priva did not waive this right before the IJ, I would extend Priva relief because he need not show substantial prejudice or prejudice to obtain relief.

For the reasons herein, I respectfully dissent.