[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11990

Non-Argument Calendar

_____

NELSON EDGARDO ESCALANTE-RAMIRES,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A094-455-587

_____

Before WILSON, LUCK, and ABUDU, Circuit Judges.

PER CURIAM:

Nelson Edgardo Escalante-Ramires, a native and citizen of El Salvador, seeks review of the Board of Immigration Appeals' ("BIA") final order affirming the immigration judge's ("IJ") denial of his application for temporary protected status ("TPS"). He argues that the BIA erred in affirming the IJ's denial of TPS by not adjudicating *de novo* his initial registration for TPS. The government, in turn, argues that our precedent allowing for review of a noncitizen's statutory eligibility for TPS in *Mejia Rodriguez v. Secretary, Department of Homeland Security*, 562 F.3d 1137 (11th Cir. 2009), was abrogated by the Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328 (2022), except as to colorable constitutional or legal issues. Following a review of the record and the applicable law, we reject the government's position, but nevertheless deny Escalante-Ramires's petition for review.

## I.    FACTUAL    BACKGROUND    &    PROCEDURAL HISTORY

Escalante-Ramires entered the United States without inspection in September 1990. On or around April 2, 2001, he applied for TPS. In his application, he confirmed that he had entered the United States without inspection in September 1990, had resided in the United States since that time, and that he had been arrested or imprisoned for violating a law. In December 2003, the Immigration and Naturalization Service ("INS") denied his application for

TPS, finding that although he had submitted evidence showing his physical presence in the United States, he failed to submit a copy of the disposition of his arrests, as required.

Almost a decade later, in February 2013, the Department of Homeland Security issued a Notice to Appear, charging Escalante-Ramires as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without having been admitted or paroled. At a hearing before the IJ in March 2013, he conceded his removability as charged. At a later hearing in September 2014, Escalante-Ramires informed the IJ that he had filed for TPS in 2001 and he asked the IJ to review his eligibility for that status. He stated that his initial TPS application was denied in 2003 because he failed to timely file necessary documents related to his criminal history which he since had obtained but never submitted. The IJ issued a continuance to allow Escalante-Ramires to file those documents.

The IJ held another hearing in November 2014, where Escalante-Ramires requested that the current proceedings be administratively closed to allow the U.S. Citizenship and Immigration Services ("USCIS") to review his new application for TPS he intended to file. The IJ granted his request.

In his new TPS application filed in February 2015, Escalante-Ramires stated that he was re-registering for TPS and requested an employment authorization document ("EAD"). He stated that his date of last entry into the United States was on October 12, 1991, and that he had remained in the United States since that time, and

was arrested in California in 1993, where he ultimately pled no contest to a misdemeanor charge.

In August 2015, the USCIS sent Escalante-Ramires a notice of intent to deny his TPS application. However, it gave Escalante-Ramires an opportunity to submit evidence that he had either previously filed, or had been approved, for TPS under the initial registration period for El Salvador or under the late initial filing provisions. In response, Escalante-Ramires submitted documents showing he filed an initial application for TPS in April 2001, which was denied. The USCIS searched additional records and found that during Escalante-Ramires's hearing before the IJ in November 2014, he had indicated his intent to reapply for TPS. As a result, in November 2015, the USCIS denied his re-registration application. The USCIS explained that because Escalante-Ramires's initial TPS application had been denied, his re-registration had to be denied.

In February 2016, Escalante-Ramires moved the IJ to re-calendar his removal proceedings to allow for a review of the USCIS's denial of his 2015 TPS application. He asserted that the USCIS's denial of his re-registration was based on the denial of his initial TPS application, which was done in error. The IJ granted his motion.

In July 2016, Escalante-Ramires filed another application for TPS, which the USCIS accepted under the late initial filing provisions. In July 2017, the USCIS informed him that he failed to submit sufficient evidence to establish eligibility to file under the late initial filing provisions. In response, Escalante-Ramires provided

the USCIS a California identification card issued in July 2003, Florida identification cards issued in August 2014 and March 2015, and tax documents from 2001. In November 2017, the USCIS denied Escalante-Ramires's TPS application, finding that he failed to establish that he had been continuously physically present in the United States from March 9, 2001, to the date he filed the application or that he had continuously resided in the United States since February 13, 2001.

However, the USCIS later reopened Escalante-Ramires's case in September 2018. The USCIS then, again, denied Escalante-Ramires's application for TPS under the late registration scheme, finding that he did not overcome the issues outlined in the November 2017 denial letter, that he failed to show that he was a national of El Salvador, and that he failed to show evidence that he had continuously resided in the United States since 2001.

Meanwhile, the IJ held a hearing in August 2018 in Escalante-Ramires's reopened removal proceedings. There, the IJ suggested that Escalante-Ramires's counsel file a memorandum as to how TPS review should be conducted. In his memorandum, Escalante-Ramires argued that he could seek *de novo* review of his TPS application by an IJ while in removal proceedings pursuant to BIA precedent. He argued that, upon submission of the disposition of his convictions, he qualified for TPS under his initial TPS application that was denied in 2003 because that was the only requirement that he failed to meet.

At another hearing in July 2019, the IJ noted the USCIS's November 2017 order denying Escalante-Ramires's TPS application, highlighting that the USCIS found many more deficiencies within the TPS application in addition to the lack of evidence regarding the criminal conviction. Escalante-Ramires acknowledged this but emphasized that the 2003 denial was only based on a lack of documentary evidence regarding his conviction and that the 2003 denial sufficiently demonstrated that he submitted evidence proving his physical presence.

In response, the government argued that the September 2018 TPS denial was the one ripe for review, meaning Escalante-Ramires needed to establish eligibility requirements under the late initial registration filing rules. The IJ agreed, again noting the many TPS application denials that occurred after the 2003 denial, explaining that she would review the latest TPS application denial.

The IJ considered the documentary evidence Escalante-Ramires submitted to the USCIS, as well as utility bill receipts from three months in 2000; EADs from 2014 and 2001; a Medicare card from 2014; a social security earnings statement; paystubs from varying months in 2014, 2013, and 2011; income tax returns from 2011 and 2013 through 2015; banking documents showing he was a customer since 2007; a 2002 social security card; and money orders and receipts from varying months in 2000. The IJ also heard testimony from Escalante-Ramires regarding his eligibility for TPS, during which he stated he had not exited the United States since 1991.

Ultimately, the IJ denied Escalante-Ramires's application for TPS. First, the IJ found Escalante-Ramires to be a credible witness. The IJ then noted that Escalante-Ramires had the right to a *de novo* review of his TPS eligibility while in removal proceedings, citing this Court's opinion in *Mejia Rodriguez* and the BIA's opinion in *Matter of Henriquez Rivera*, 25 I. & N. Dec. 575 (BIA 2011). The IJ also noted that the court could consider any material and relevant evidence, regardless of whether it was considered by the USCIS.

As to the merits, the IJ found that Escalante-Ramires failed to submit sufficient evidence to show his continuous residence since February 13, 2001, and his physical presence since March 9, 2001, because there was no evidence for the years 2008, 2009, 2010, and 2012, and there was limited evidence for the remaining years. The IJ found that, although Escalante-Ramires testified that he remained in the United States since he entered in November 1991 and that he had not left since, he had not met his burden to establish continuous and physical presence from the applicable dates.

Escalante-Ramires appealed the IJ's decision to the BIA. There, he argued that the IJ erred by not reviewing *de novo* his April 2001 TPS application. He argued that, under BIA precedent, he was entitled to *de novo* review of his eligibility for TPS in removal proceedings, regardless of whether he had subsequent applications. He argued that, because the IJ should have limited her review to the April 2001 TPS application, she should have only looked at whether he met the requirements at that time for initial registration, not the more stringent requirements for re-registration.

The BIA adopted and affirmed the IJ's denial of TPS. The BIA found that Escalante-Ramires had not cited to authority for his contention that his submission of the disposition of his arrests with his current application meant that the April 2001 TPS application was revived such that the IJ should only consider whether Escalante-Ramires was eligible for TPS at the time of his first application. Escalante-Ramires's petition for review followed.

## II.    DISCUSSION

### A. *We Have Jurisdiction to Review the Denial of Escalante-Ramires's TPS Application.*

In its brief, the government argues that we lack jurisdiction to consider the denial of Escalante-Ramires's TPS application because it involves a discretionary decision, not one of statutory eligibility. It contends that, although we have addressed this issue in *Mejia Rodriguez,* 562 F.3d at 1143, that decision has been abrogated by *Patel*, 596 U.S. at 347, and we must not review the merits of the TPS application denial.

Under the prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by us sitting *en banc*." *Priva v. U.S. Att'y Gen.*, 34 F.4th 946, 954-55 (11th Cir.) *cert. denied*, 143 S. Ct. 526 (2022) (quotation marks omitted).

We review *de novo* this Court's subject matter jurisdiction. *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1217 (11th Cir. 2023). The Immigration and Nationality Act ("INA") states that "no court

shall have jurisdiction to review" any judgment regarding a grant of relief under sections 1182(h), 1182(i), 1229b, 1229c, or 1255, or any other discretionary decision or action of the Attorney General or the Secretary of Homeland Security.  8 U.S.C. § 1252(a)(2)(B).  However, courts retain jurisdiction to review "constitutional claims or questions of law" raised in a petition for review.  8 U.S.C. § 1252(a)(2)(D).

In *Mejia Rodriguez*, a TPS applicant challenged the agency's determination finding him statutorily ineligible for TPS.  562 F.3d at 1139.  There, we held that "[t]he ultimate decision of whether to grant TPS to [a noncitizen] is undisputedly within the discretion of the Secretary."  562 F.3d at 1143.  However, we explained that "§ 1252(a)(2)(B)(ii) does not preclude the district court from reviewing [a noncitizen's] challenges to these determinations . . . because such *non-discretionary*, statutory eligibility decisions made by USCIS fall outside the limitations on judicial review in the INA."  *Id*. at 1144-45.  We also stated that no other judicial review provisions in § 1252 barred review of the noncitizen's claim.  *Id*. at 1145.  Thus, we "concluded that the provisions of § 1252(a)(2)(B)(ii) do not preclude judicial review of the determinations that USCIS made regarding [a noncitizen's] statutory eligibility for TPS."  *Id*.

More than a decade later, while sitting *en banc*, we analyzed the reviewability of agency determinations under 8 U.S.C. § 1252(a)(2)(B)(i) and held that we were "precluded from reviewing any judgment regarding the granting of relief under 8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c, or 1255 except to the extent that

such review involves constitutional claims or questions of law." *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (*en banc*), *aff'd*, *Patel*, 596 U.S. at 347 (internal quotation marks and brackets omitted). We noted that "1252(a)(2)(B)(ii) is . . . a catchall provision to preclude our review of those other categories of discretionary relief." *Id*. at 1282 (internal quotation marks omitted). The U.S. Supreme Court affirmed our *en banc* opinion, holding that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and other provisions enumerated in § 1252(a)(2)(B)(i)." *Patel*, 596 U.S. at 347.

Recently, in *Bouarfa v. Secretary, Department of Homeland Security*, 75 F.4th 1157, 1159 (11th Cir. 2023), we were tasked with deciding whether a district court had subject-matter jurisdiction over a complaint challenging the revocation of an approval of a visa petition. In determining that the district court did not have jurisdiction, we distinguished Bouarfa's claim as one that challenged the agency's decision on how to exercise its discretion, which barred review, unlike claims that we have held are not barred from judicial review even when the challenged action relates to a discretionary decision. *Id*. at 1163. We stated that Bouarfa's claim was different than those types of claims that argue that the agency "made a non-discretionary determination that is a statutory predicate to [its] exercise of discretion." *Id*. Using *Mejia Rodriguez* to illuminate our holding, we restated that, when the agency denied TPS, it had determined that the noncitizen was statutorily ineligible, and the district court had subject-matter jurisdiction to review such determination. *Id*. We reiterated that "[a] claim that the [agency] reached

the wrong outcome when [it] decided how to exercise [its] discretion stands in stark contrast to a claim of error in determining statutory eligibility[.]" *Id.*

Here, our precedent allowing for judicial review of the agency's determination of a noncitizen's statutory eligibility for TPS was not abrogated by *Patel*. *Patel* involved a different subsection of the INA, 8 U.S.C. § 1252(a)(2)(B)(i), than the subsection relevant to review here, 8 U.S.C. § 1252(a)(2)(B)(ii). *Patel*, 596 U.S. at 347. Although the government wishes to apply the reasoning from *Patel* to the relevant subsection here, we are bound by our prior precedent in *Mejia Rodriguez* which holds that the agency's determination as to statutory eligibility for TPS is reviewable. Accordingly, because *Mejia Rodriguez* remains binding, we address Escalante-Ramires's petition for review to the extent he disputes the agency's determinations as to his statutory eligibility for TPS.

### B. The BIA and IJ Appropriately Denied Escalante-Ramires's TPS Application.

Escalante-Ramires argues that he sought *de novo* review of the denial of his renewed application based on his initial April 2001 TPS application filing. However, the IJ erroneously reviewed the USCIS's most recent decision denying his application, and the IJ subsequently failed to give him the benefit of a *de novo* review. The government responds by arguing that Escalante-Ramires failed to exhaust his arguments related to his testimony and the IJ's application of certain laws and regulations. It also rejects Escalante-Ramires's arguments.

We review legal conclusions *de novo* and factual findings for substantial evidence. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). We review only the decision of the BIA, except to the extent that the BIA expressly adopted the decision of the IJ. *Ponce Flores*, 64 F.4th at 1217.

Section 1252(d)(1) of the INA provides that a court can review a final order of removal only if the noncitizen has exhausted all administrative remedies available as of right. 8 U.S.C. § 1252(d)(1). We have held that "[a] petitioner has not exhausted a claim unless he has both raised the 'core issue' before the BIA and also set out any discrete arguments he relies on in support of that claim." *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 800 (11th Cir. 2016) (citations omitted). Exhaustion "is not a stringent requirement," and petitioners simply "must have previously argued the core issue now on appeal before the BIA." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (internal quotation marks omitted).

The obligation to exhaust administrative remedies is a claims-processing rule, is not jurisdictional, and is subject to waiver and forfeiture. *Santos-Zacaria v. Garland*, 598 U.S. 411, 419-23 (2023). Claims-processing rules, such as § 1252(d)(1)'s exhaustion requirement, are generally applied where they have been asserted by a party. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

TPS provides humanitarian relief to foreign nationals in the United States that have come from specific countries, including El Salvador. *Sanchez v. Mayorkas*, 593 U.S. 409, 411-12 (2021). The

United States granted Salvadoran citizens TPS eligibility following a series of devastating earthquakes that hit the country in 2001, *id.* at 413, and the country's designation for TPS has continued to be extended, *Alas-Murcia v. U.S. Att'y Gen.*, 589 F. App'x 441, 443 (11th Cir. 2014) (unpublished).

An initial application for TPS is typically filed with the USCIS. 8 C.F.R. §§ 244.6, 244.7, 244.9, 1244.6, 1244.7, 1244.9. Generally, a noncitizen meets the requirements for eligibility for TPS if he: (1) "has been continuously physically present in the United States since the effective date of the most recent designation" of the applicable country; (2) "has continuously resided in the United States since" a designated date; (3) is admissible and not ineligible for TPS; and (4) timely registers. 8 U.S.C. § 1254a(c)(1)(A). A noncitizen is ineligible for TPS if he "has been convicted of any felony or 2 or more misdemeanors committed in the United States." 8 U.S.C. § 1254a(c)(2)(B)(i). Importantly, to meet the burden of proof of establishing eligibility for TPS, "the applicant must provide supporting documentary evidence of eligibility apart from his or her own statements." 8 C.F.R. § 244.9(b).

A noncitizen may apply for TPS "during the initial registration period announced by public notice in the Federal Register, or [d]uring any subsequent extension of such designation if at the time of the initial registration period" the applicant met specific criteria. 8 C.F.R. § 244.2(f)(1)-(2). The initial registration period for Salvadoran citizens began on March 9, 2001, and ended on September 9, 2002. Designation of El Salvador Under Temporary Protected

Status Program, 66 Fed. Reg. 14214-01, at 14214 (Mar. 9, 2001). To be eligible for registration, the noncitizen must "have been 'continuously physically present' in the United States since March 9, 2001, and have 'continuously resided' in the United States since February 13, 2001" during the registration period. *Id.* (quoting 8 U.S.C. § 1254a(c)(1)(A)(i)-(ii)).

Individuals who did not apply during the initial registration period could register during any subsequent extensions of El Salvador's TPS status if they met the requirements in 8 C.F.R. § 244.2(f)(2). *Id.* Under 8 C.F.R. § 244.2(f)(2), a noncitizen who did not apply for TPS during the initial registration period could file a TPS application during a subsequent extension if they met the statutory requirements and, at the time of the initial registration period the noncitizen: (1) was a nonimmigrant or had been granted voluntary departure status or relief from removal; (2) had an application for change of status, adjustment of status, asylum, voluntary departure, or relief from removal that was pending or subject to additional review; (3) was a parolee or had a pending request for reparole; or (4) was a spouse or child of an noncitizen currently eligible to register for TPS.

In *Mejia Rodriguez*, we noted that federal regulations gave noncitizens the "right to a *de novo* determination of [their] eligibility for TPS by the [IJ], which decision may be appealed to the BIA" if the noncitizen's "TPS application is denied by USCIS and the Department subsequently places the [noncitizen] into removal proceedings." 562 F.3d at 1140 (citing 8 C.F.R. §§ 244.10(d), 244.11).

23-11990                Opinion of the Court                15

Additionally, if a charging document is served on the noncitizen with a notice of denial of TPS, the noncitizen may renew his TPS application in removal proceedings. 8 C.F.R. § 244.11. An administrative appeal dismissing an appeal of the denial of an application for TPS "shall also apprise the [noncitizen] of his or her right to a de novo determination of eligibility for [TPS] in removal proceedings." 8 C.F.R. § 244.10(d)(1).

In *Matter of Henriquez Rivera*, the BIA determined that TPS regulations could not reasonably be construed as requiring an applicant to file a new application for TPS before an IJ rather than allowing the IJ to rely on the initial application filed with the USCIS. 25 I. & N. Dec. 575, 578 (BIA 2011). It found that the term "renew" implied a procedure that contemplated the production of the previous TPS application. *Id*. It found that, "[a]bsent specific regulatory language that requires the applicant to file a new application and supporting documentation, [it would] not impose such a burden on the applicant." *Id*. Additionally, in *Matter of Figueroa*, the BIA held that, upon *de novo* review of a TPS application, an IJ adjudicating a renewed TPS application during removal proceedings "may consider any material and relevant evidence, whether or not it was previously" considered by the USCIS. 25 I. & N. Dec. 596, 596 (BIA 2011).

As an initial matter, to the extent the government argues that Escalate-Ramires failed to exhaust his administrative remedies because he failed to make the specific arguments he makes before this Court, such assertion is misplaced. Escalante-Ramires may not

have raised these specific arguments before the BIA, but he did raise the core issue of whether the IJ erred in denying his TPS application by declining to adjudicate his initial application for TPS and instead adjudicating the subsequent application. *Jeune*, 810 F.3d at 800. Because he brought the core issue before the BIA, he exhausted this issue, and it is properly before this Court. *Id*; *Indrawati*, 779 F.3d at 1298.

Nevertheless, we deny Escalante-Ramires's petition for review. Escalante-Ramires is correct that this Court's and the BIA's precedent and applicable regulations entitle him to *de novo* review of his TPS application. *Mejia Rodriguez*, 562 F.3d at 1140; 8 C.F.R. § 244.11; *Matter of Henriquez Rivera*, 25 I. & N. at 578. However, even if the IJ and BIA erred in looking at subsequent applications instead of his initial April 2001 application, according to the applicable regulations, he still had to show continuous physical presence since the applicable designation date according to the requirements for initial registration, and nothing in the applicable statutes or regulations states that a showing of physical presence stops at the date that the original application was filed. INA § 244(c)(1)(A); 8 U.S.C. § 254a(c)(1)(A); 8 C.F.R. § 244.2(f)(1); 66 Fed. Reg. 14214. Therefore, Escalante-Ramires was required to make a showing of continuous physical presence from the applicable designation dates until the IJ's *de novo* determination as to his eligibility for TPS, and that requirement did not end when he filed his April 2001 TPS application.

As to continuous physical presence, applicable regulations state that meeting the burden of establishing eligibility for TPS requires documentary evidence apart from the applicant's own statements.  Thus, Escalante-Ramires's arguments on appeal in support of his eligibility, based on his testimony before the IJ alone uncorroborated by record evidence, are insufficient to establish his eligibility for TPS.  8 C.F.R. § 244.9(b).  Because Escalante-Ramires failed to present satisfactory evidence regarding his eligibility for TPS, he has not demonstrated any reversible error in the IJ's decision and the BIA's affirmance of that decision.

### III.    CONCLUSION

For the reasons set forth above, we **DENY** Escalante-Ramires's petition for review.